(48 Misc. Rep. 453)

### In re HEARST et al.

(Supreme Court, Special Term, New York County. November, 1905.)

1. ELECTIONS—BALLOTS—VOTING MARKS.

Although Election Law, Laws 1898, p. 968, c. 335, § 105, rule 7, defines a valid voting mark as one straight line across another straight line, a ballot will not necessarily be held invalid because the marks constituting the cross are not exactly straight or even or regular, but such ballot will be held valid if there is a substantial compliance with the law, and not a manifest intent to evade or violate it.

2. SAME.

Any irregularity in a voting mark, due to dimly-lighted booths, tremulous or nervous hands, bad eyesight, etc., is harmless, and it is only where an attempt to make a distinguishing mark can be inferred that the ballot should be rejected.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Elections, § 167.]

3. SAME.

A slight upward stroke before beginning the downward stroke of the voting mark on a ballot does not invalidate the ballot, but a distinct and firmly drawn loop affords evidence of intent to make a distinguishing mark, and the ballot will be rejected.

4. SAME.

A ballot is not necessarily rendered invalid by reason of the elector's having retraced his stroke in making the voting mark, but the test of validity is whether the peculiarity of marking is accidental or designed.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Elections, § 167.]

5. SAME.

A ballot is not invalidated by the fact that some of the lines of the voting mark extend outside the voting circle or space, provided the point of intersection lies within such circle or space.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Elections, § 154.]

6. SAME—DISTINGUISHING MARKS.

The fact that a mark on a ballot is small and not easily distinguishable, or is in some inconspicuous position, is not evidence that such mark was accidental.

7. SAME.

Under Election Law, Laws 1898, p. 971, c. 335, § 110, subd. 2, rule 9, which, in effect, declares ballots containing distinguishing marks void, any mark not authorized by law and which distinguishes a ballot, although appearing on the reverse side of the ballot, is as fatal as if it appeared on the face thereof.

8. SAME—PRESUMPTIONS.

It is presumed that any distinguishing mark appearing on a ballot, whether on its face or on its back, was there at the time the ballot left the hands of the elector, unless the ballot is protested on specified grounds; in which case it will be deemed that only the specified defect existed at the time the ballot was opened.

9. SAME.

Tears in ballots are, in general, presumed to have been made by the voter.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Elections, § 164.]

10. SAME.

Marks on ballots which are so indistinct that it is impossible to determine whether they were made by the printer or the voter do not invalidate the ballot.

Mandamus proceedings, under section 114 of the Election Law, Laws 1896, p. 966, c. 909, instituted on the application of William Randolph Hearst and others for a judicial investigation of alleged void and protested ballots cast at an election held in the county of New York on November 7, 1905.

Clarence J. Shearn (Austin G. Fox, Clarence J. Shearn, William Allaire Shortt, H. de Forest Baldwin, Edward B. Whitney, Walter L. Rathborne, Wm. B. Waring, Frederick W. Noble, Joseph F. Darling, and Joseph T. Weed, of counsel), for William Randolph Hearst, candidate for mayor on the Municipal Ownership League ticket.

Parker, Hatch & Sheehan (Alton B. Parker, John F. Cloonan, and Eugene L. Richards, of counsel), for George B. McClellan, candidate for mayor on the Democratic ticket.

Knox & Dooling (Charles H. Knox, John J. Dooling, R. Burnham Moffat, W. Benton Crisp, M. Warley Platzek, Edward Swann, Jacob Marks, and Walter S. Logan, of counsel), for Tammany Hall Law Committee.

Arthur C. Butts and Terence A. Farley, Asst. Corp. Counsel, for board of canvassers.

Gherardi Davis, for assembly and aldermanic candidates.

Louis L. Delafield and Alexander A. Mayper, for William Travers Jerome, candidate for district attorney.

GIEGERICH, J.   Since so many new counsel are constantly appearing in this proceeding, owing, doubtless, to the fact that it is protracted through so many days, and that late afternoon and evening sessions are held, it may be useful to set forth some of the chief rules which have guided me in my findings on contested ballots, and the principles underlying such rules, in order that, as counsel come in, they may, as far as possible, be apprised of the course of the proceedings so far had.   Although the Election Law, Laws 1898, p. 968; c. 335, rule 7, § 105, defines a valid voting mark as one straight line crossing another straight line, a ballot will not necessarily be held invalid because the marks constituting the cross are not exactly straight, or even, or regular.   If there be a substantial compliance, without a manifest intent to evade or violate the law, the ballot is held valid.   In determining whether a ballot has been marked so as to be distinguishable, it should not only be kept in mind that the primary object of the

present act is to insure secrecy and purity of the ballot (People ex rel. Nichols v. Board of Canvassers, 129 N. Y. 395, 29 N. E. 327, 14 L. R. A. 624), but, on the other hand, it should equally be kept in mind that voters often have to mark the ballots under unfavorable conditions. The voting booths are narrow, and oftentimes dimly lighted, and the shelves serving as tables may be more or less uneven in surface. Some hands are tremulous or nervous, and others are stiff, untrained, and little accustomed to holding a pencil. There may be dimness of eyesight. The texture or thickness of the paper may vary, and the quality of the lead in the pencil may be inferior. Any irregularity apparently due to a cause just enumerated, or any similar cause, is harmless, and it is only where an attempt to make a distinguishing mark can be inferred that the ballot should be rejected. For instance, a slight upward stroke before beginning the downward stroke is a habit of many men, and does not invalidate a ballot. But where, instead of such slight upward stroke, there is a distinct and firmly drawn loop, evidence of intent is present, and the ballot will be rejected. Sometimes a resort to a magnifying glass is permissible and helpful to determine whether the mark in question was intentional or accidental, as where one line parallels another; the question being whether such second line was made designedly, or was due to unevenness in the pencil point. The same may be said of a split at the end of a line. A ballot is not necessarily invalid, however, even though the elector has retraced his stroke, and each case has to be determined on its own facts; the test being whether the peculiarity of marking is accidental or designed. So, too, an enlargement may occur at the upper end of the line, and be either a blur caused by the softness and breaking down of the lead of the pencil as pressure is first applied to begin the stroke, or it may be a mark caused with obvious intent, by moving the pencil about before beginning the downward stroke. In such a case, again, the use of a magnifying glass is helpful, not for the purpose of discovering whether there is such an enlargement (that fact being perfectly obvious), but for the purpose of discovering whether it was caused in the one way just mentioned or the other.

One point has been practically agreed upon by all concerned, and that is that a ballot is not invalidated by the mere fact that some of the lines extend outside the voting circle or space, provided the point of intersection lies within such circle or space. The mere fact that a mark may be small and not easily distinguishable, or is in some inconspicuous position upon the ballot, is no evidence that such mark was accidental. If a mark of identification had been prearranged between a voter and one who had purchased his vote, the mark agreed upon would, of course, be neither decided nor very distinct, nor placed in a conspicuous position. Such a course, they would be well aware, would defeat the purpose of the corrupt transaction by invalidating the ballot. Any mark not authorized by law, and which distinguishes a ballot, appearing on the reverse side of the ballot, is as fatal as though it appeared upon the face thereof. Election Law, Laws 1898, p. 971, c. 335, § 110, subd. 2, rule 9. The general presumption is that any distinguishing mark appearing upon a ballot, whether upon its face or on its back, was there at the time the ballot left the hands of the elector.

There is an exception to this presumption, however, in a case where the ground of protest is specified. In such cases it will be deemed that only the defect so specified existed at the time the ballot was opened, and the decision of the canvassers must stand or fall upon the ground alone. If, however, the protest is general, and states no ground, the general presumption above stated obtains. Tears in ballots are presumed not to have been made by the voter, except as above noted. So, too, marks are held not to invalidate the ballot when they are so indistinct that it is impossible to determine whether they were made by the printer or by the voter.