### FALLON v. DWYER et al.

(Supreme Court, Appellate Division, First Department.   December 17, 1909.)

1. ELECTIONS (§ 180*)—BALLOTS—VALIDITY.
    Where a voter placed a cross in more than one circle at the head of the tickets, and the name of the same candidate appeared on each of the tickets, or there was a blank with respect to the office on one of the tickets, the vote must be counted for the candidate under Election Law (Consol. Laws, c. 17) § 368, rule 6, relating to the marking of ballots.
    [Ed. Note.—For other cases, see Elections, Dec. Dig. § 180.*]

2. ELECTIONS (§ 180*)—BALLOTS—VALIDITY.
    Election Law (Consol. Laws, c. 17) § 358, prescribing how a ballot shall be marked, and prohibiting other marking than a cross-mark made for the purpose of voting, etc., must be liberally construed, and, when so construed, ballots marked by wavering or irregular lines or ballots marked by the pencil being run back and.forth over a line with a view of making it distinct, though the lines formed are not single straight lines, but additional lines are made, must be counted.
    [Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 151, 152; Dec. Dig. § 180.*]

3. ELECTIONS (§ 180*)—BALLOTS—VALIDITY.
    Where a voter has confined his efforts to making a cross on a ballot, Election Law (Consol. Laws, c. 17) § 358, prescribing how a ballot shall be marked, and prohibiting other marks than the cross-mark made for the purpose of voting, should be liberally construed to sustain the ballot, though he did not make straight lines.
    [Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 151, 152; Dec. Dig. § 180.*]

Appeal from Special Term, New York County.

In the matter of the application of Joseph P. Fallon for a writ of mandamus requiring a recount of ballots cast at an election in which John J. Dwyer intervened. From an order granting a peremptory writ of mandamus to the county board of canvassers, petitioner appeals. Affirmed.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

A. S. Gilbert (Julius M. Mayer, on the brief), for appellant.

James C. Church, for respondent Dwyer.

LAUGHLIN, J.   The petitioner was a candidate for the office of judge of the Municipal Court for the Eighth municipal district of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

city of New York at the last general election. The certified original statements of the result of the canvass in some of the election districts showed that a certain number of the ballots counted were protested as marked for identification, and this proceeding was instituted pursuant to the provisions of section 381 of the election law (Consol. Laws, c. 17) for a writ of mandamus requiring a recount of the votes on such ballots and also of the ballots rejected by the inspectors as void. That section of the election law authorizes the proceeding, and it is therein expressly provided that, if the court shall determine that any ballot protested as marked for identification "was marked for the purpose of identification," it shall order the ballot and the votes thereon to be excluded upon a recount, and that, if the court shall determine that the votes upon any ballot rejected by the inspectors as void "should be counted," it shall order such ballots and the votes thereon to be counted. On the return of the application, the respondent Dwyer, who was a candidate for the same office, and who, on the face of the returns, as we are informed by counsel, had an apparent plurality of 36 votes over the petitioner, intervened. Counsel for the respective parties have only requested a decision by the court with respect to 170 ballots, which on the proceeding at Special Term were marked as exhibits from 1 to 170, inclusive. Of these, 84 were rejected as void by the inspectors and not counted, 82 were declared valid by the inspectors, and 64 of them counted for Dwyer and 18 counted for the petitioner, 2 of the remaining number were not voted, and, evidently by mistake, were put in the envelope with void and protested ballots, and 2 were deemed blank ballots, and those 4 were not counted. The learned justice at Special Term made a decision on an inspection of the ballots, containing findings of fact and conclusions of law, in which the action of the inspectors with respect to the various ballots is stated, with the exception that ballot marked "Exhibit No. 41" is not enumerated in the findings of fact with respect to the action of the inspectors, although it is considered in the conclusions of law. That ballot appears on inspection to have been deemed by the inspectors a valid ballot, and to have been counted for the petitioner. We are of opinion that it is void, and should not have been counted, for the reason that it contains pencil marks other than the cross in the voting space in front of the petitioner's name. The fifth finding of fact is, therefore, erroneous, in that ballot, "Exhibit No. 41," should have been enumerated therein. In the conclusions of law, the learned court has decided that some of the ballots which the inspectors rejected as void were valid, and has also decided that some of those which were counted, but protested as having been marked for identification, should not have been counted. Although there is no provision requiring a formal decision containing findings of fact and conclusions of law as a basis for an order for a peremptory writ of mandamus, in the circumstances, we have deemed it proper to let our decision take the form of an amendment both of the final order and of the decision in accordance with the conclusion at which we have arrived with respect to each ballot.

It is not practicable to describe in an opinion the various marks on the ballots which it is claimed renders them void. The ballots have

all been examined and tested in the light of the statutory provisions with respect thereto as authoritatively construed by the courts. If the statute be construed strictly, very few of these ballots would be valid. In some instances the questions presented are not difficult. They merely require the application of the plain provisions of the statute, as, for instance, where the voting mark, being the cross, is placed outside the circle or voting space. In other instances the inspectors erroneously rejected ballots where the voter placed a cross in more than one circle at the head of the tickets, and where the name of the same candidate for the office of judge of the Municipal Court in this district appeared on each of such tickets. Those ballots should have been counted for this office by virtue of the provisions of rule No. 6 of section 368 of the election law, which are as follows:

"If the voter shall have made a voting mark in more than one circle at the head of the tickets, and if on either of such tickets there shall be one or more candidates for office for which no other candidate or candidates is or are named on such other ticket or tickets so marked in the circle, his vote shall be counted for such candidate or candidates."

In some instances, where there was a cross-mark in more than one circle, one of the tickets was blank with respect to this office, and in one instance there was a cross in three circles, and the same candidate was on each ticket. There was no difficulty in those instances in determining the intention of the voter under the rules therefor prescribed by the Legislature. The fact that he manifested his intention three times to vote for the same candidate did not invalidate his efforts. Inasmuch as there was "no other candidate or candidates" on either ticket for this office, there is no legal objection to counting the ballot for a candidate who happens to be on all of the tickets so marked. In other instances evidently the inspectors rejected ballots on account of there being a cross-mark in more than one circle at the head of the ticket. Such marking, by virtue of the same rule, is permitted, and does not render the ballot void. In most instances, however, the question arises over the pencil marks made by the voter in the circle or voting space. In some instances, instead of forming a single cross by two lines crossing at any angle as prescribed by the statute, the voter has made several lines, and in some instances has connected the ends of these lines, and on others has evidently run the pencil back and forth moistened, forming wide, solid lines, and in other instances the pencil has evidently been run back and forth and lifted from the paper, leaving many points, presenting the appearance of the end of a line, some straight, but in most instances quite irregular, projecting from the ends of the main cross-lines, and in some instances the lines forming the cross are quite irregular and enlarged very much at points, and others indicate that the pencil probably struck the paper before the voter was ready to make the cross; and others that he did not lift it from the paper when he had completed the cross-mark. Section 358 of the election law prescribes, among other things, how the ballot shall be marked, and prohibits other marking thereof, and provides that if a voter shall deface or tear a ballot, or wrongfully mark the same, he may successively obtain others from the ballot clerks until he shall have obtained three sets. It is therein expressly provided as follows:

"It shall not be lawful to make any mark upon the official ballot other than the cross X mark made for the purpose of voting with a pencil having black lead, and that only in the circle or in the voting spaces to the left of the names of the candidates, or to write anything thereon other than the name or names of persons not printed upon the ballot for whom the voter desires to vote in the blank column under the proper title of the office, with a pencil having black lead; nor shall it be lawful to deface or tear a ballot in any manner, nor to erase any name or mark written thereon by such voter. *   *   *

"The voter shall observe the following rules in marking his ballot. *   *   *

"Rule 7. One straight line crossing another straight line at any angle within a party circle, or within the voting space, shall be deemed a valid voting mark."

Void ballots are defined by rule No. 9 of section 368 of the election law, as follows:

"A void ballot is a ballot upon which there shall be found any mark other than a single cross X mark made for the purpose of voting, which voting mark must be made with a pencil having black lead, only in the circles or in the voting spaces to the left of the names of the candidates; or one upon which anything is written other than the name or names of persons not printed upon the ballot, for whom the voter desires to vote, which must be written in the blank column under the proper title of the office with a pencil having black lead; or one which is defaced or torn by the voter; or upon which there shall be found any erasure of any printed device, figure, letter or word, or of any name or mark written thereon, by such voter; or in which shall be found inclosed a separate piece of paper or other material; and upon such ballot no vote for any candidate thereon shall be counted."

Section 370 of the election law provides that, when a ballot is not void and an inspector of election or other officer or watcher shall declare his belief that the ballot has been written upon or marked for the purpose of identification, the inspectors shall write on the back of the ballot the words, "Protested as Marked for Identification," and shall specify the mark or marking upon the ballot to which objection is made and shall subscribe their signatures thereto. Section 371 of the election law makes it a felony for any person to make a mark on or tear or deface a ballot taken from the ballot box, with the intent of causing the ballot to be rejected as void. Section 373 of the election law directs that the inspectors shall indorse upon each ballot declared void by them the specific reason for its rejection, and that such ballots and those protested as marked for identification shall be secured in a separate sealed package and filed with the original statement of the canvass.

These statutory provisions, construed literally, would indicate that the Legislature deemed that it had so clearly defined a void ballot; that there could be no mistake made by the inspectors in deciding the question as to whether a ballot was valid or void; and that a ballot might be marked for identification without such marking making it a void ballot, and in such instances only was it intended to provide that a ballot which the inspectors deemed valid should be protested. It does not appear to have been provided that ballots which the majority of the board of inspectors deemed valid, but which one of the inspectors or a watcher deems void, may be protested and set apart with the void ballots for a judicial review as provided in the election law, and therefore the only review of a decision of the inspectors that a ballot is valid unless it be protested as marked for identification is in ordinary cases by quo warranto. A casual reading of rule 9 of section

368 of the election law would seem to indicate that a ballot could not be marked for identification without rendering it void, but it is possible that the Legislature had in mind that the ballots might be lawfully marked by use of the voting mark or by writing a name or names in the blank spaces provided for that purpose, so that it could not be said to be a void ballot, and yet that this might have been done unnecessarily and for the purpose of identifying the ballot, and, on that being found, the court is authorized to direct that the ballot or vote be not counted on the recount of the votes ordered by it.　This question, however, is too important to be decided until a case arises squarely presenting it, which is not the case now before the court.　A literal reading of the statute would confine the court to a determination of the question as to whether the ballots which were protested as marked for identification were so marked for identification, and, where such an inquiry is necessary, it is possible that the Legislature intended that evidence de hors the record should be taken.　The Court of Appeals has, however, decided that, notwithstanding this phraseology of the statute, the court is not confined to a determination as to whether the protest was well taken upon the ground that the ballot was marked for identification, but may and should consider the broad question as to whether the ballot is valid, and, if not, should so adjudge and direct that it be not counted.　People ex rel. White v. Aldermen, 157 N. Y. 431, 52 N. E. 181.　The ballots in question in this proceeding are either valid or void under said rule 9 of section 368, and no evidence has been taken de hors the record to indicate that the voter in exercising his legal right to make the voting mark has unnecessarily made use of that mark for the purpose of identifying his ballot.

We are unanimously of the opinion that in determining whether these pencil marks in the voting circle render the ballot void the statute should not be construed strictly.　The Legislature in prescribing in section 358 a rule to be observed by the voters did not intend, we think, to disfranchise a voter who could not draw a straight line.　An inspection of the ballots indicates that the lines in some instances are wavering or irregular, as if made by a hand unfamiliar with the use of a pencil, or cold or trembling, or of an infirm person or one whose eyesight may not have been good, and in other instances it is apparent that the pencil was run back and forth over a line with a view to making it distinct, and in some instances it is apparent that the pencil was moistened and it is not improbable that this was done for the same purpose, and doubtless the standing posture, the roughness of the shelf or table, and the want of sufficient light may have affected the making of the voting mark.　In these instances the lines are not, strictly speaking, two single straight lines crossing at any angle, but we are unanimously of opinion that in all such instances the ballots should be counted.　Getting beyond these instances and coming to ballots where, in running the pencil back and forth, perhaps to make the line plain, it is apparent that additional lines were made for part of the distance, which are separated at the ends and in some instances continue apart until they cross the other line of the cross, we have not all been in accord with respect to whether the ballot should be deemed

valid or void.  The majority of the court are of opinion that, where the voter has confined his efforts to making a cross, the statute should be liberally construed to sustain his ballot, even though he did not make straight lines and even though it appears that he ran the pencil back and forth, leaving the ends of the cross-marks showing separate points, whether made by an irregular surface on the lead in the pencil, or by lifting the pencil from the paper after running it out to some extent to one side of the main line of the cross in an effort to make that line complete or distinct, even though he may have thus made the lines of the cross wider than ordinary pencil lines and somewhat irregular.  With this general statement of the rule upon which the court has proceeded, it remains only to record the result of our views. No question is presented as to how any ballot should be counted, but only as to whether it should be counted.

We are unanimously of opinion that the ballots marked Exhibits Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 34, 39, 43, 62, 74, 78, 80, 82, 84, 85, 88, 89, 91, 97, 99, 104, 106, 107, 108, 109, 110, 111, 113, 120, 121, 123, 126, 128, 129, 130, 134, 135, 136, 137, 140, 141, 144, 147, 149, 153, 157, 159, 161, 162, 163, 164, and 165 are valid, and should be counted, and that ballots, Exhibits Nos. 1, 21, 35, 37, 46, 47, 48, 50, 52, 53, 54, 55, 56, 57, 59, 60, 61, 64, 70, 71, 72, 73, 75, 79, 81, 87, 92, 93, 95, 103, 112, 132, 143, 148, 154, 155, 156, 167, 169, and 170, are void and should not be counted, and that ballots, Exhibits Nos. 100 and 101, are blank, and ballots, Exhibits Nos. 102 and 114, were not voted, and should not be counted.

The court also decides that ballots marked Exhibits Nos. 16, 33, 36, 38, 45, 49, 51, 58, 67, 90, 96, 98, 105, 115, 119, 122, 124, 125, 131, 138, 139, 151, 152, 160, 166, and 168 are valid, and should be counted, the writer dissenting, and that ballot No. 86 is valid, and should be counted, CLARKE, J., and the writer dissenting, and that ballots marked Exhibits Nos. 32, 40, 41, 42, 44, 63, 65, 66, 68, 76, 77, 94, 116, 117, 118, 127, 133, 142, 145, 146, 150, and 158 are void and should not be counted, HOUGHTON, J., dissenting.

The decision and order are therefore modified in accordance with these views, and, as modified, affirmed.  Let the order be settled on notice, as requested by counsel.  All concur.