PEOPLE ex rel. LYTLE v. JOHNSON et al.

(Supreme Court, Special Term, Wayne County. April 10, 1916.)

1. ELECTIONS ⬤⟹194(1, 7)—VALIDITY OF BALLOT—STATUTE.

Under Election Law (Consol. Laws, c. 17) § 86, as added by Laws 1911, c. 891, § 47, defining a void ballot as one upon which there "shall be found any mark other than a cross X mark made for the purpose of voting," and declaring that upon such ballot no vote for any candidate shall be counted, a ballot having a surplus cross mark thereon and a ballot which, in addition to the voting cross marks, bore a small pencil mark following the name of a candidate, were void, and properly rejected by the canvassers.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 166, 167; Dec. Dig. ⬤⟹194(1, 7).]

2. ELECTIONS ⬤⟹194(1)—BALLOTS—VALIDITY.

Election Law, § 358, subd. 4, providing that, if the voter desires to vote for any person whose name does not appear on the ballot, he may do so by writing the name with a pencil in the proper place in the blank column, does not authorize the making of any mark upon a ballot other than the required cross mark, or the name of a person not appearing on the ballot for whom the voter desires to vote.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 166, 167; Dec. Dig. ⬤⟹194(1).]

---

3. **ELECTIONS ⊚⟶291—MARKS ON BALLOT—PRESUMPTION.**

In the absence of some fact showing the contrary, the presumption is that a slanting lead pencil mark was upon a ballot when it left the voter's hands, and a mere surmise that it was accidentally made by one of the inspectors cannot rebut such presumption; and the fact that the inspectors rejected it as void because the name of a person was written thereon, and that they did not notice the slanting mark, did not defeat the presumption, or a consideration of the mark in determining the ballot's validity.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 286; Dec. Dig. ⊚⟶291.]

4. **ELECTIONS ⊚⟶269—BALLOT—INVALIDITY.**

A void ballot may be attacked in any proper tribunal for any and all causes vitiating its legality.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 245, 246; Dec. Dig. ⊚⟶269.]

Proceeding by the People, on the relation of Frederick Lytle, against William S. Johnson, as Village President, and others. Petition denied.

Charles P. Williams, of Lyons, for petitioner.
Jefferson W. Hoag, of Lyons, for respondents.

SAWYER, J. **[1]** The ballot spoken of upon the argument as No. 1, and having the surplus cross mark thereon, is clearly void, and was properly rejected by the canvassers. Election Law, § 86; Feeny v. Board of Canvassers, 156 N. Y. 36, 50 N. E. 425; In re Fallon, 135 App. Div. 195, 119 N. Y. Supp. 1061; In re Garvin, 168 App. Div. 218, 153 N. Y. Supp. 549.

In my opinion that which has been designated as No. 2, and which, in addition to the voting cross marks, bears a small pencil mark just following the name of Emory W. Garr, is likewise absolutely void, and was properly rejected. The Election Law at section 86 defines a void ballot in precise terms as being one "upon which there shall be found *any mark* other than a cross X mark made for the purpose of voting," and then provides that "upon such ballot no vote for any candidate thereon shall be counted."

**[2]** It is conceded by counsel that in writing the name of Charles Price upon this ballot the voter intended to designate Mr. Price as his choice for the office of village treasurer, and he was fully authorized by law so to do. Election Law, § 358, subd. 4. The statute, however, does not authorize the making of any mark upon a ballot other than the required cross mark, or the name of a person which is not printed upon the ballot and for whom the voter desires to vote.

**[3]** The theory advanced by relator as to the manner in which the slanting lead pencil mark may have been accidentally made by one of the inspectors is both ingenious and plausible; but the difficulty is that, in the absence of some fact showing the contrary, the presumption is that the mark was upon the ballot when it left the voter's hands, and I take it a mere surmise cannot rebut such presumption. A situation similar to this is admirably commented upon by Mr. Jus-

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tice Giegerich in the Matter of Hearst, 48 Misc. Rep. 453, 456, 96 N. Y. Supp. 119, 121, in the following language:

"The mere fact that a mark may be small and not easily distinguishable, or is in some inconspicuous position upon the ballot, is no evidence that such mark was accidental. If a mark of identification had been prearranged between a voter and one who had purchased his vote, the mark agreed upon would, of course, be neither decided, nor very distinct, nor placed in a conspicuous position. Such a course, they would be well aware, would defeat the purpose of the corrupt transaction by invalidating the ballot."

The inspectors of election seem to agree in the statement that this ballot was rejected as void because the name of Charles Price was written thereon, and that they did not notice, or at least did not consider the slanting mark spoken of in their determination. It would seem, therefore, that the ballot was properly rejected, but for the wrong reason.

Counsel for relator argues with much insistence that this fact defeats the presumption that the mark was upon the ballot when it left the voter's hands, and that it is now too late to consider that mark in the determination of the ballot's validity. For this he relies upon the general statement in Matter of Hearst, supra, found upon page 457, of 48 Misc. Rep. (96 N. Y. Supp. 119). That holding seems not applicable here. The learned justice then had under consideration certain ballots which, under section 370 of the Election Law as it then was, had been protested to the inspectors by some interested party as "marked for identification." It will be borne in mind that such ballots had not been declared void by the inspectors and had entered into the result of their canvass. Under such circumstances the learned justice was undoubtedly correct in his ruling that the protestants were estopped from thereafter raising any question other than that to which they had specifically called the attention of the inspectors.

[4] Here, so far as appears, no protest was entered to the inspectors against the ballot No. 2. They decided it was a void ballot and acted accordingly. A void ballot is a void ballot, and may be attacked in any proper tribunal for any and all causes which vitiate its legality.

For these reasons I am persuaded that relator's petition must be denied. So ordered.