THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM E. KARNS, Respondent, v. GEORGE A. PORTER, Appellant.

Fourth Department, January 10, 1917.

Election — quo warranto to determine which of two candidates was elected — ballots, when validity may be question of fact — intention of voter — accidental marks on ballot — various defects in ballots considered.

*It seems*, that in an action in the nature of quo warranto brought to determine which of two candidates for a political office was legally elected, the question as to the validity of ballots cast may become a question of fact.

Under the Election Law as it existed in March, 1916 (and as it now stands), there is no such thing as a ballot marked by the voter for identification. The ballot is valid or void, to be judged by a definite test prescribed by the statute.

Although the intention of a voter does not control the validity of his ballot, for it may be void by reason of erasures or other defects irrespective of his intention, yet the court under the authority of the statute may consider within narrow limits the intention of the voter in respect of certain pencil marks on a ballot. Thus the court may say that slight pencil marks on a ballot were made by the voter unintentionally, as when handling the ballot, or by accidental contact with the pencil, and such marks are to be distinguished from marks made intentionally.

Various ballots examined by the court, and *held:*

That a cross made with double lines in the voting space did not invalidate the ballot;

(The parties conceded that imperfections due to the penetration of the ballot by pencils used over a rough surface did not invalidate the ballot.)

That pencil marks which were clearly of accidental origin did not invalidate the ballot;

That a ballot with a single line instead of a cross in the voting space was void;

That marks in the voting space in addition to the cross mark rendered the ballot void;

That a figure made of many lines, but not constituting a cross, rendered the ballot void;

That where there were several lines in the voting space which were not cross marks, the ballot was void;

That a ballot with an irregular figure, not a cross, in the voting space, was void.

That a ballot with a detached line in the voting space was void.

History of the use of ballots at elections in this State pursuant to constitutional and statutory authority outlined and discussed, per DE ANGELIS, J.

APPEAL by the defendant, George A. Porter, from a judgment of the Supreme Court in favor of the relator, entered in the office of the clerk of the county of Orleans on the 18th day of May, 1916, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on or about the 6th day of June, 1916, denying defendant's motion for a new trial made upon the minutes.

*Isaac S. Signor* and *Charles G. Signor,* for the appellant.

*David A. White,* for the respondent.

DE ANGELIS, J.:

The action was in the nature of quo warranto pursuant to sections 1948 to 1956 inclusive and sections 1983, 1984 and 1986 of the Code of Civil Procedure, to oust George A. Porter, the defendant, from the office of supervisor of the town of Albion, in Orleans county, and to declare William E. Karns, the relator, by the legal votes of the electors of that town at an election held on the 7th day of March, 1916, duly elected to such office and entitled to hold the same. The defendant had been declared elected by the canvassing board and was holding the office. Under the direction of the trial court the jury rendered a verdict in favor of the relator and the judgment appealed from was thereupon granted ousting and excluding the defendant from the office and awarding the title to the office to the relator.

Three candidates were voted for at the election, George A. Porter, the defendant, William E. Karns, the relator, and Bert L. Perkins, and the official returns showed that Porter received 667, Karns 665, and Perkins 69 votes. This result gave Porter a plurality of two votes and he was declared elected, filed his bond, took the oath of office and entered upon the discharge of the duties thereof.

Upon the trial all the ballots cast at the election were produced and investigated by the court to determine their validity.

Upon the argument, the counsel for the respective litigants

conceded that there was no evidence justifying an inference that any ballot had been marked for identification by any elector; and that the validity of no ballot was to be affected solely because it was torn, nor solely because the ballot appeared to be perforated by the pencil when the voter was attempting to make the voting cross.

By the agreement of counsel only eighty-one ballots were submitted to this court for its consideration in determining this appeal, marked as Exhibits 1 to and including 83 respectively, excepting 22 and 64.

There was no evidence offered nor received upon the trial raising any issue as to the validity of ballots beyond what was disclosed solely by the ballots themselves, but early in the trial the defendant raised the question whether or not a ballot claimed to have been marked for identification or otherwise than with a pencil containing black lead or presenting the appearance of an erasure or effacement, was a matter of fact as to which fair-minded persons might differ and bearing upon which conflicting testimony might be adduced. If upon the face of the ballots any such question of fact arose we are not prepared to hold that the Court of Appeals has determined the question adversely to the defendant. In *People ex rel. Feeny* v. *Board of Canvassers* (156 N. Y. 36) the opinion of the court was pronounced by Judge GRAY who did not discuss this question. Judge HAIGHT, who filed a concurring opinion, among other things, stated: "Questions of fact may arise as to whether a ballot is marked for identification, or is torn by a voter or the inspectors of the election, or is marked otherwise than with a pencil containing black lead, which may depend upon the testimony of witnesses."

Judge O'BRIEN delivered an opinion concurred in by only one other judge in which he said: "That statute declares that when a ballot discloses certain marks or physical appearance it shall not be counted, and we have the ballots before us with certain marks and appearances upon them, and whether they come within the condemnation of the statute is a pure question of law."

These expressions of opinion are *dicta* only. In *People ex rel. Krulish* v. *Fornes* (175 N. Y. 114) Judge CULLEN said:

"In *People ex rel. Feeny* v. *Board of Canvassers* (156 N. Y. 36) it was held that whether a ballot was so marked as to be void presented a question of law to be determined on the face of the ballot, and to that decision we adhere."

That again was a *dictum*. In *Matter of Metz* v. *Maddox* (189 N. Y. 460) Chief Judge CULLEN said: "Either party may appeal to the courts to review the action of the canvassers in holding any ballot void or to have any of the protested ballots thrown out as marked for identification. This review presents for determination only questions of law arising on the face of the ballots."

That again was a *dictum* although proceeding from a very high source. It is true that the *Feeny* matter was a mandamus proceeding under the Election Law, the *Krulish* matter was a proceeding by certiorari under the charter of the city of New York, and the *Metz* matter was a proceeding for a writ of prohibition to prevent a recount of ballots under an act held to be unconstitutional by the Court of Appeals, and were not actions in the nature of quo warranto and, therefore, are to be distinguished from the case at bar.

Assuming, however, that questions of fact might arise in the respects referred to, we have carefully examined the ballots submitted to us for consideration and we find nothing on them raising a question of fact.

Passing to a consideration of these ballots, it may be useful to dwell briefly upon the history of the use of ballots at elections in this State pursuant to constitutional and statutory authority.

Prior to the first Constitution, that of 1777, voting was largely *viva voce*, but that Constitution (§§ 6, 17, 20) established the system of voting by ballot for some offices and the system was extended from time to time until we have that of to-day. Voting by ballot probably implies the exercise of the franchise so that it shall not be known for whom or for what the ballot was cast, but there was no express reference to the secrecy of the ballot in any of the Constitutions of the State until the adoption of section 5 of article 2 of the present Constitution.

From the earliest legislation for voting by ballot there have been requirements to secure secrecy in voting. For instance,

chapter 16 of the Laws of 1778 was a general act to regulate elections. It provided for carrying out the requirement of the Constitution of 1777, that the Governor and Lieutenant-Governor should be elected by ballot. The ballot to be used and the manner in which it should be voted were prescribed in the act. The ballot was to be a paper ticket containing the name of a person for Governor and the name of a person for Lieutenant-Governor or one of them (as the case might require) severally "wrote" thereon which paper ticket was to be so folded, rolled up, tied or otherwise closed as to conceal the writing. The ticket so prepared was to be delivered by the voter openly to one of the inspectors of election who was to receive the same in the presence of the others. Similar provisions extended down through the Revised Statutes and the several general election statutes to the year 1890.

Chapter 366 of the Laws of 1880 provided for uniform ballots and that act and chapter 56 of the Laws of 1880 were designed to secure greater secrecy in voting than had theretofore existed and to diminish election frauds.

Chapter 262 of the Laws of 1890 inaugurated a radical change in the Election Law and among other things provided for official ballots printed and distributed at public expense. It also contained the following (§ 27): "If any voter spoils a ballot he may obtain another full set and so on successively not exceeding four full sets in all, upon returning to the ballot clerks the set of ballots containing the spoiled ballots." (Note section 31 of the act regarding defective ballots in connection with section 42 of article 4 of title 4 of chapter 130 of the Laws of 1842.) This statute was amended by chapter 296 of the Laws of 1891 and section 31 thereof as so amended provided, for the first time, that objections might be made to ballots on the ground that they were marked for identification. Chapter 680 of the Laws of 1892, being chapter 6 of the General Laws, replaced former legislation upon the subject of the Election Law. Chapter 810 of the Laws of 1895, amending the act of 1892, introduced the system of voting by cross marks. This legislation was replaced and amended by chapter 909 of the Laws of 1896 constituting chapter 6 of the General Laws. This general Election Law of 1896, although principally a

re-enactment of the former law as amended by the act of 1895, is generally referred to as the original source of much that really appeared in the amendments of 1895.   Sections 105 and 110 of the act of 1896 contained the provisions to determine the validity of a ballot.   Section 105 laid down two rules to be observed by the elector, the last one of which contained, among other things, the following:  "*One* straight line crossing *another* straight line at any angle within a circle, or within the voting spaces, shall be deemed a valid voting mark."   (The italics are ours.)   This section was amended by chapter 335 of the Laws of 1898 wherein seven rules were prescribed for observance by the elector and in the 7th rule was repeated the language just quoted.   Section 110 of the act of 1896 contained the regulations to govern the canvassing board, and, with regard to the *intent of electors,* six rules were laid down in subdivision 2 of that section.   This section was amended by chapter 335 of the Laws of 1898 in which nine rules were prescribed to govern the canvassing board on the subject of the intent of the electors.   Rule No. 9 was amended by chapter 654 of the Laws of 1901.   Rule No. 9 before the amendment of 1901 contained the following:  "A void ballot is a ballot upon which there shall be found any mark other than the cross X mark made for the purpose of voting, " etc.   As so amended it contained the following:  "A void ballot is a ballot upon which there shall be found any mark other than a *single* cross X mark made for the purpose of voting," etc.   (The italics are ours.)   Chapter 22 of the Laws of 1909, constituting chapter 17 of the Consolidated Laws, took the place of former legislation regulating elections.   Section 358 of the new law replaced section 105 of the act of 1896 as amended.   The two sections are substantially alike except in rule 7 the language is changed from " at any angle within a circle " to " at any angle within a party circle."   Sections 366 to 372 inclusive of the new law replaced section 110 of the former law as amended.   Section 368 of the new law contained the nine rules to guide the canvassers respecting the *intent* of the voters.   Rule number 9 corresponds with the rule number 9 of the old law except in some respects not material here.   In the new statute the cross mark is printed in the form of the multiplication

sign, or nearly in that of a St. Andrew's cross, instead of the capital letter X appearing in the printed form of the cross in the former legislation. Section 358 was amended by chapter 296 of the Laws of 1911 whereby rule 7 was amended so that it reads as follows: "*Any* straight line crossing any *other* straight line at any angle within a party circle, or within a voting space, shall be deemed a valid voting mark." Section 368 of the new law was amended by chapter 296 of the Laws of 1911 and rule number 9 was thereby amended by striking out the word "single" before the words "cross X mark" in the second line and, by adding at the end, a semi-colon instead of the period and the words "but no ballot shall be declared void because a cross mark thereon is irregular in character." This section was further amended by chapter 649 of the Laws of 1911 when rules numbers 10 and 11 were added, and the last clause of rule number 9 was made to read: "but no ballot shall be declared void because a cross X mark thereon is irregular in character." Section 358 was again amended by chapter 821 of the Laws of 1913, which reduced the number of rules to five. The last paragraph of rule 5 is in part as follows: "A cross X mark shall consist of any straight line crossing any other straight line, at any angle, within a circle or voting square. Any mark other than a cross X mark or any erasure of any kind shall make the whole ballot void; but no ballot shall be declared void because a cross X mark thereon is irregular in character. Any ballot which is defaced or torn by the voter shall be void." This section was amended by chapter 537 of the Laws of 1916 whereby the word "form" was substituted for the word "character" but that is not important here because this case must be governed by the law as it stood at the time of the election. Section 368 was repealed by chapter 821 of the Laws of 1913, and, in effect, a new section 368 was substituted. By this change in the law the rules governing the validity of ballots were reduced to those contained in section 358 as amended. Section 368, which preserved the idea that the board of canvassers were to pass upon the intention of the voters to an extent that might be misleading, was eliminated.

It should be carefully noted that, as the provisions regulating elections existed in March, 1916, when the election in dispute

took place, they contained and now contain no reference to the marking of a ballot for identification.    The first legislation on this subject, as already stated, appeared in section 31 of the Election Law of 1890 (Chap. 262), as amended by chapter 296 of the Laws of 1891.    Somewhat changed, this provision appeared in the last paragraph of section 114 of chapter 680 of the Laws of 1892, as follows: "When an inspector of election or other election officer or duly authorized watcher shall, during a canvass of the votes, or immediately after the completion thereof, declare his belief that any particular ballot, paster, or paster ballot affixed thereto, has been written upon or marked in any way for the purpose of identification, the inspectors or canvassers shall write on the back of such ballot the words 'objected to because marked for identification,' or words in substance to that effect, and sign their names thereto, and attach each such ballot to their written statement of the result of the canvass.    Each such ballot shall be counted by them the same as if not so objected to."

This section was amended by chapter 810 of the Laws of 1895 and the provision quoted was retained somewhat changed so as not to include ballots that were objectionable upon some other ground.    In the Election Law of 1896 this provision was retained in subdivision 3 of section 110 and also in the amendment thereto made by chapter 335 of the Laws of 1898, in both of which it begins in this manner: "When a ballot is not void," etc.    This provision was retained in section 370 of the Election Law of 1909 as contained in the Consolidated Laws where it begins in this wise: "When any particular ballot is not void," etc. This provision was repealed by chapter 821 of the Laws of 1913 and thereby legislation upon the subject of identification of ballots at elections disappeared, as hereinbefore observed.    There was, however, preserved in section 369, as amended by chapter 821 of the Laws of 1913, ample opportunity for objection to the counting or to the refusal to count any ballot, upon any tenable ground.

We have, therefore, from the presence, in the statutory law, of provisions on the subject of the *intention* of the voter and on the subject of ballots *marked for identification*, and the

subsequent elimination of such provisions, the result that, according to certain tests explicitly stated in the present statute regulating elections, ballots are either valid or void, depending solely upon the evidence furnished by the ballots themselves.

The law thus established has been developed and crystallized from experience in the practical use of our system of voting by ballot. There is now no such thing as a ballot marked by the voter for identification. The ballot is valid or void, judged by a definite test. Room for our consideration of the intent of the voter is slight, because the statutory standard to determine the validity of a ballot has been arrived at in recognition of that important element. The case at bar illustrates how insignificant a part the intention of the voters plays in determining the validity of ballots. We start with the concession that no elector cast a ballot with a fraudulent intent. If intent were to govern, every ballot should be counted. Again, the largest number of ballots which we are about to hold as void will be so held because of erasures, whereas those ballots indicate, in almost every instance, the detection of an error made by the voter and his deliberate, but mistaken, attempt to correct the error.

There seems, however, to remain by sound interpretation of the statute, if not expressly stated therein, the right of the court to consider, within narrow limits, the intention of the voter in respect of certain pencil marks on a ballot. The court may say that slight pencil marks on a ballot were made by the voter unintentionally, such as might be made in handling the ballot and its accidental contact with the pencil. Such marks do not include, and are to be distinguished from, marks made intentionally.

In *Matter of Fallon* (197 N. Y. 336, affg. 135 App. Div. 195), where the controversy arose over the November election of 1909 when a valid voting mark was described as " one straight line crossing another straight line at any angle within a party circle, or within the voting spaces," and a void ballot as " a ballot upon which there shall be found any mark other than a single cross X mark," etc., the Court of Appeals hold that it was practically impossible for a person to make a line that is technically straight without the use of mechanical appliances

and that the provisions of the statute should be liberally construed in view of the effect of the infirmity by reason of age or otherwise, or the poor eyesight or the untrained muscles of an elector, upon the voting mark he might make, and that a voting mark should be held valid as substantially complying with the statute, even if it is somewhat hooked at the end or the line has been retraced and the pencil has not been kept exactly on the line at parts removed from the point where the lines cross. This case was decided before the amendment heretofore referred to which provided that no ballot should be declared void because a cross mark made thereon should be irregular in character.

In *Matter of Garvin* (168 App. Div. 218) the Appellate Division of the First Department held that slight pencil dots appearing adjacent to the voting cross, evidently made by the voter's resting his pencil upon the paper before or after making the cross, did not invalidate his ballot. The controversy there arose over the ballots cast at a primary election held in September, 1914. In that same case it was held that one line of a cross in the voting space on a ballot made the ballot void.

In *Matter of Brown* v. *Board of Canvassers of Queens Co.* (170 App. Div. 476), where the controversy arose over the election of 1914, it was held that a ballot having a semi-circular mark over the voting cross in the voting space, but not a part of it, was void. That case was reviewed by the Court of Appeals where the decision of the Appellate Division was modified in some other respects but this ruling was not disturbed because Exhibit No. 28 (the ballot in question) was not furnished to the Court of Appeals. (216 N. Y. 732.)

In this connection we think we should say that the courts, in their desire to avoid disfranchising electors, have approached nervously near the point of overriding statutory requirements. The simplest form of a signature for those who cannot write is that of a cross. The ideal form of the cross to be made by a voter is given in the statute. It could not reasonably be expected that any voter would have the practiced eye and the practiced hand to make, without instruments, the ideal cross mark, so that it was reasonable for the courts to say that the two lines forming the cross need not be technically straight,

and may be even somewhat hooked at the ends or retraced when the pencil has not kept exactly on the lines at parts removed from the point where the lines cross, and for the Legislature to say that no ballot should be declared void because a cross mark thereon was irregular in character (now " form "). It was also reasonable for the Legislature to repeal the provision that *one* straight line crossing *another* straight line at any angle within a circle, or within the voting spaces, should be deemed a valid voting mark, and that a void ballot was one upon which there should be found any mark other than a single cross mark made for the purpose of voting, and substitute, in the place thereof, a provision that a cross mark should consist of any straight line crossing any other straight line at any angle within a circle or voting square and that any mark other than a cross mark or any erasure of any kind should make the whole ballot void but no ballot should be declared void because a cross mark thereon was irregular in character (now " form "). At the same time, a cross is the voting sign, not two crosses nor several lines forming a figure whose general appearance might possibly present what might be regarded as the general form of a cross. We think in holding a voting mark valid, allowance should be made for such reasonable irregularity thereof as may reasonably arise from infirmities and lack of skill in the voter, but such allowance should not go further than to permit the retracing of the lines of the cross and that condition of the lines of the cross which naturally comes from such infirmities and lack of skill in the voter. It seems to us that three considerations should lead the courts away from too much laxity in the construction of the Election Law in the respects under discussion. In the first place, the voter has ample opportunity to obtain a new ballot to replace one upon which he has made a mistake. In the second place, there is ample provision for aid to a voter who needs assistance. In the third place, the Legislature has provided a very simple mode of voting. It has been suggested that an elector who is illiterate or infirm may have too much pride to ask for aid, or an elector who has made a mistake on his ballot may have too much pride to ask for another, but we should not be too considerate of such a manifestation of pride. We should not con-

tribute to any tendency on the part of electors to underestimate the value and importance of the elective franchise.

After this review of the law, we may now classify and pass upon the ballots submitted to us for that purpose.

We have concluded that the ballots represented by the following exhibit numbers were valid: 4, 7, 13, 23, 25, 27, 29, 32, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 54, 55, 57, 58, 59, 60, 62, 69, 70, 71, 72, 73, 74, 76, 78, 79, 80, 81 and 83.

Numbers 25, 36, 37, 38, 41, 48, 54, 58, 60, 73, 76 and 80 of the foregoing have irregular voting marks thereon which are not condemned by our liberal interpretation of the law.

Numbers 13, 23, 71 and 72 have double lines in the voting marks.

Numbers 7, 25, 29, 32, 42, 46, 47, 54, 57, 58, 60, 74, 78 and 79 have imperfections due to the penetration thereof by pencils used over rough or unsuitable surfaces which do not affect their validity by agreement of counsel.

Numbers 7, 13, 54, 73 and 83 have pencil marks thereon clearly of accidental origin.

We have concluded that the following ballots represented by the following exhibit numbers were void: 1, 2, 3, 5, 6, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, 24, 26, 28, 30, 31, 33, 52, 53, 56, 61, 63, 65, 66, 67, 68, 75, 77 and 82.

All these are void because of erasures or defacements except 19, where there is a single line of a cross in the voting square before the name of Friendly A. Stoughton in the seventh section; 26, where there are some marks other than a cross mark in the voting square before the name of Elmer E. Thomas in the twelfth section; 31, where in the voting square before the name of William E. Karns in the first section there is a figure made of many lines but not a cross mark; 33, where there are several lines in the voting square before the name of Charles W. Butts and like lines in the voting square before the name of Howard Harling in the fifth section that are not cross marks; 52, where in the voting square before the name of William B. Youngs in the third section there is an irregular figure but not a cross mark; 63, where in the voting square before the name of Orville H. Taylor in the fourth section there is an irregular

figure and not a cross mark; 67, where in the voting square before the name of James S. Lent in the ninth section there is an irregular figure and not a cross mark; 77, where in the voting square before the name of William B. Youngs in the third section there is an irregular figure but not a cross mark; and 82, where there is a detached line in the voting square before the name of Orville H. Taylor in the fourth section.

In the eighty-one ballots submitted to us, forty-five are valid and thirty-six void.

Of the votes so found valid numbers 23, 25, 27, 29, 32, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 60, 69, 70, 71, 72, 73, 74, 76, 78, 80 and 81 were cast for Karns, and numbers 4, 7, 13, 54, 55, 57, 58, 59, 62, 79 and 83 were cast for Porter.

Of the votes so found void, numbers 24, 26, 28, 31, 33, 52, 53, 61, 65, 67, 75, 77 and 82 were cast for Karns and numbers 1, 2, 3, 5, 6, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, 30, 56, 63, 66 and 68 were cast for Porter.

The record shows and on the argument it was conceded that there had been cast 601 unquestioned ballots for Karns and 616 for Porter. Of the questioned ballots, the trial court determined that 37 should be counted for Karns and 11 for Porter. We have counted 34 of the questioned ballots for Karns and 11 for Porter. The result is that Karns received 635 valid ballots and Porter 627.

It follows that the judgment and order appealed from should be affirmed, with costs.

All concurred.

Judgment and order affirmed, with costs.