In the Matter of the Application of MELVIN D. SCHOONMAKER, Petitioner, for an Examination of Ballots under the Election Law and to Declare the Election for Police Justice for the Village of Ellenville Held on the 19th Day of March, 1940, Spurious and Void.

Supreme Court, Ulster County, June 19, 1940.

*Flanagan & Kaercher*, for the petitioner.

*Cashin & Ewig*, for the respondent Herman Cohen.

*Clarence A. Hoornbeck*, for the Trustees of the Village of Ellenville and the Board of Canvassers of the Village of Ellenville, respondents.

Murray, J.   Melvin D. Schoonmaker, the petitioner herein, at the regular village election held on March 19, 1940, in the village of Ellenville, county of Ulster, State of New York, was a candidate for the office of police justice.   He was a candidate of the " Independent Democrats," and by their petition this group selected and designated as their emblem for their party an open or hollow square.   The petitioner herein acquiesced in the selection and designation of this emblem as a symbol of the ideals of his candidacy, with no premonition as to the resultant confusion, distress and misfortune to be caused by the selection of such emblem.

The facts and circumstances surrounding the election are undisputed and not controverted to any extent by the respondents, consisting of the village board, who on the date in question, acted as a board of election.   The voting was by paper ballot, and the official canvass of said vote showed that Herman Cohen received 587 votes, and the petitioner received 374 votes.   Two other candidates for the same office received a lesser number of votes, and do not question the result in any respect.   However, there were 214 ballots of vital interest to the petitioner that were marked void, and not counted in his favor.   These questioned ballots consisted of 207 ballots of voters who had marked " X " in the open and hollow square designated as the party emblem for the petitioner, instead of in the space at the right of the emblem at the place of the so-called voting square; the remaining seven ballots had been marked " X " in not only the party emblem, symbolized by a square, but also in the voting space to the right thereof.   Simple computation shows that if these votes were accredited to the petitioner he would be the victor by a margin of one vote — 588 for Schoonmaker and 587 for the incumbent, Herman Cohen.

It is further admitted by the respondents that certain formalities in relation to the form and contents of the ballots were not carefully complied with, nor was the proper procedure for public inspection of the ballots followed by said board.   It is conceded that no sample ballots were available until at least one-half hour before the election, in disregard of the directions contained in section 109 of the Election Law, providing in substance as to village elections of this kind that the sample ballots shall be open to public inspection at least two days before the election, and the official ballots at least one day before such election.

The admitted discrepancy as to the content of the official ballot consisted of an error in the dimensions of the voting square in which the voter is instructed to cast his vote by marking " X." The voting square to the right of the emblem was eight-sixteenths of an inch in width and fourteen-sixteenths of an inch in depth,

thus creating a rectangular block or form instead of an exact square. The emblem square itself was an exact square of fourteen-sixteenths of an inch in width and in depth. In this respect there was no compliance either as to the emblem or voting square with section 104 of the Election Law, providing that the voting square and the space occupied by the emblem shall have a depth and width of five-sixteenths of an inch.

With reliance upon these outlined irregularities and the failure of strict compliance with the Election Law, the petitioner applies for an order directing the village board of canvassers to correct the errors in its canvass and perform its duty by rejecting and excluding from its canvass all votes cast for the position of police justice on March 19, 1940, with the further direction that the said election for police justice be declared spurious and void.

This court does not feel it is authorized by law to void an election of this kind, but believes that, despite the prayer of the petitioner, it possesses the plenary and summary power to decide the question presented under subdivision 4 of section 330 of the Election Law in relation to protested, wholly blank or void ballots. There is no dispute as to the questioned ballots, and an examination by the court of said ballots is unnecessary. (*People ex rel. Oliver* v. *Russ,* 187 N. Y. Supp. 298.)

In considering the contention of the petitioner, it must be remembered that the difference in the area of the so-called voting square existed as to the four candidates for police justice on the ballot, and was not confined solely to the voting area at the left of his name and to the right of his emblem. It must also be remembered that no protest as to the form of the ballot was made by the petitioner at any time during the election, nor was there any effort on his part to legally compel, prior to the election, the performance of the duty of allowing public inspection prior to the election. On that question, however, he insists that he was unable to see a sample ballot, although he requested one, but he cannot deny that there was a legal remedy to compel such public display of the ballot. The seriousness of the discrepancy as to the form and content of the ballot is belied by the petitioner's own failure to protest at any time during the election as to its form and content.

In defense of their actions, and in answer to the intimation of possible fraud on their part contained in the moving papers, the respondents show by affidavit reasonable and satisfactory excuse for the irregularities that transpired in relation to the election. These affidavits show that the failure to display the sample ballots was caused by difficulty encountered by the printer in obtaining a cut for another emblem to be placed upon the ballot. The dif-

ference in the area of the voting square from the dimensions outlined in section 104 of the Election Law is also plausibly explained by the affidavit of the printer of the ballots.

It must be remembered that in elections the human elements of carelessness and informality are always present to some degree, and it is only sufficient in applications of this kind that the boards of election intrusted by the law with the proper conduct of elections endeavor to the best of their ability to substantially comply with the technical, and at times confusing, directions of the Election Law. This court is convinced that the respondents herein acted in good faith and with honest motives, and that their failure to strictly comply with the law is excusable under the circumstances and that they are entitled to the presumption accorded to all public officials that they acted fairly and impartially in the administration of their duties.

Let us consider the position of the petitioner. This court does not wish to speculate, but it seems reasonable to assume that if the dimensions of the voting square to which he directs his objections were in strict accordance with the dimensions set forth in section 104 of the Election Law, possible confusion would still result to the voters seeking to cast their ballot for him. If the square did legally conform, public inspection two days prior to the election could not change the situation, because he had designated and selected his emblem. If it did so conform, public inspection, or inspection on the part of the petitioner, would have been a mere formality, and he could not object to the situation that he and his party created.

To this court, if the voters were confused and misled as to the proper manner of voting for the petitioner, the situation was obviously caused by the positive act of the petitioner and his party in selecting an emblem similar to a voting square and with the knowledge that such emblem was to be placed at a point adjacent to and near said voting square. The petitioner cannot be held blameless and judicially allowed to benefit by his own mistake. The court does not wish to chide the petitioner for an honest mistake, but must remember that hindsight still gives a much clearer perception than foresight.

The direction as to the manner of voting at the head of each ballot clearly directed: " To vote for a candidate on this ballot, make a single cross (x) mark in one of the squares to the *right of an emblem* opposite his name." (Italics mine.) With this explicit direction, the possible confusion apparently existing in the minds of the voters can only be traced to the acts of the petitioner and his party, and such confusion cannot reasonably be laid at the door of the election officials.

In *People ex rel. Simons* v. *Knickerbocker* (225 App. Div. 212; affd., 250 N. Y. 594) the court said: " In the case at bar the first fault was with the election officials. By the form of ballot provided by them they misled the voter and invited him to make the cross complained of." That situation is not present in this application.

The ballot is valid or void, judged by a definite test. Room for our consideration of the intent of the voter is slight, because the statutory standard to determine the validity of a ballot has been arrived at in recognition of that important element. (*People ex rel. Karns* v. *Porter,* 176 App. Div. 330, 337.)

Therefore, under the facts presented in this application, this court decides that the irregularities complained of by the petitioner were immaterial in relation to the final result of the election. This court finds that there is not sufficient reason presented to override section 219 of the Election Law declaring that ballots marked as herein are void. Therefore, the petition is dismissed, without costs, and the act of the board of canvassers in declaring the ballots in question void is upheld.

Submit order.