D. B. GRIFFITH, APPELLEE, v. W. F. BONAWITZ, APPELLANT.

FILED APRIL 19, 1905. No. 14,069.

1. **Election Contest: RECORD.** The record of a popular election is made up and finally completed at the polls and nothing can afterwards be taken therefrom or added thereto, and a trial judge cannot exclude any part of it from evidence in the trial of an election contest. *Mauck v. Brown*, 59 Neb. 382, so far as inconsistent herewith, overruled.

2. **Trial De Novo.** On appeal from the decision of a district court in a contested election, the entire record should be brought up, and it will be considered by this court *de novo*.

3. **Pleading.** On an appeal from the decision of a county court in a contested election, it is not requisite to file new pleadings in the district court.

4. **Marking Ballots.** On the trial of a contested election ballots will not be treated as void simply because of irregular or unauthorized markings or mutilations which appear to have been innocently made as the result of awkwardness, inattention, mistake or ignorance, if the lawful intent of the voter can be ascertained therefrom.

APPEAL from the district court for Jefferson county: ALBERT H. BABCOCK, JUDGE. *Affirmed.*

*W. H. Barnes, J. C. Hartington* and *W. J. Moss,* for appellant.

*John Heasty* and *C. H. Denny, contra.*

AMES, C.

This is an appeal from a decision by the district court of a contest of an election to the office of county assessor. The procedure adopted by the district court was analogous to that practiced on the trial of an ordinary adversary action, and there are returned with the bill of exceptions 244 ballots which the court formally excluded from evidence because of certain irregular, defective and unauthorized markings. The appellee, citing *Mauck v. Brown,* 59 Neb. 382, contends that the present proceeding is a technical appeal, in which the familiar rule obtains that this court will not correct the errors of the trial court with reference to exclusion of evidence, but will decide the case upon the record as it is brought here, and that therefore these excluded ballots cannot be considered. That the decision cited sustains this contention there is no doubt, and our minds are equally free from doubt that in this respect it is wrong and ought to be overruled. It was said in *Bell v. Templin,* 26 Neb. 249: "A tribunal to determine contested elections need not be, strictly speaking, a judicial body, the powers exercised being *quasi* political and administrative." And in *Thomas v. Franklin,* 42 Neb. 310, it was held more explicitly and emphatically that "the proceeding for contesting an election provided for by this statute is, strictly speaking, neither an action at law nor a suit in equity. It is a summary proceeding of a political character"—and that "it is not only a privilege but it is the duty of this court, on its own motion, to look into the record and determine whether the proceeding is authorized by such statute." If such is the case, and we quite agree that it is, it is difficult to understand how such proceedings can be rightly conducted in a purely judicial

tribunal, and in the opinion of the writer, it was both a mistake and a misfortune that the courts did not firmly decline the task many years ago when it was first thrust upon them. But however that may be, it is clear that in such contests the judges serve in the capacity of election inspectors, no more and no less. The record of an election is completely and finally made up at the polls. After it is finished no person or tribunal can lawfully add to or diminish it by a jot or tittle. The whole duty of reviewing bodies is to inspect and interpret it, and for no other purpose than to aid in so doing is parol evidence admissible. A so-called inspection that should be restricted to a part of it would be an absurdity. This seems to us so plainly manifest that comment is unnecessary and very nearly impossible. It follows that if this court is to perform any useful office upon appeal to it in such cases, the district court cannot exclude any part of the record, but must send it all up for review. A contrary practice would require all such contests, in order to give this court possession of the entire record, to be brought here by petition in error, but by analogy the only final judgment this court could render in that event would be one of affirmance. On the discovery of error the contest would require to be remanded to the district court for a new trial to be followed by another proceeding in error, and the end would seldom or never be reached until after the expiration of the term of office, the subject matter of the litigation.

The foregoing considerations dispose of another preliminary objection that no new pleadings were filed in the district court. The complaint and answer thereto that were filed in the county court, were transmitted with the record on the appeal, and embodied all the grounds of contest that were permissible thereafter to be urged in the proceeding. New pleadings could have been nothing but copies and would have served no useful purpose.

There is no charge of fraud or of intentional violation of the election law. The rejected ballots were collected, a few from each of the eighteen election precincts in the

county. The following descriptive classification of them is contained in the brief of appellant and its accuracy is not disputed by his adversary: "The first classification of the excluded ballots to which we direct the attention of the court are those ballots which are marked in the proper circle or square with a defective cross, or mark other than a cross, and this is the objection upon which most of the ballots were excluded. These marks are as various as the ballots and range from the use of three or four marks, all crossing each other, to the use of a straight line. In none of these ballots is there any question as to the intention of the voter. The purpose of the voter is clear. The second classification is the placing of a cross in both the Democratic and People's Independent circles at the head of the ticket. An inspection of the ticket discloses that in every instance the nominees on this ticket are the nominees of both the Democratic and People's Independent party, so that a cross in both circles is a vote for one and the same man, and does not and cannot create confusion in the count of the ballot. The third classification are those ballots upon which the voter has made a mistake, and attempted to erase, and thereby left a mark foreign to the ballot. The fourth classification are those ballots upon which the voter has voted for more than the proper number, or has by mistake voted for the candidates of both parties, thereby destroying the ballot as to those particular candidates. The fifth classification are those ballots upon the face of which on the line provided for such purpose is written a name, evidently placed there to be voted for, but no mark is placed after the name in the square. The sixth class are ballots which are mutilated, but from the face of which the intention of the voter can be readily gathered. The seventh class are ballots upon the face of which appear marks in the wrong place, but which have no reference to the vote for either of the parties thereto. The eighth class are those ballots upon the back of which appear the initials of one judge of election and the name of another judge. There are some few of the excluded ballots

43

that have more than one of the above objections and therefore come under more than one class."

It would not be profitable to reiterate the views of the law expressed in the opinion in *Bingham v. Broadwell, ante,* p. 605, argued and submitted and considered jointly with this case and decided at the same time. It is notable that in both cases the objections that are made to individual ballots are of a character that is commonly described as "technical." That is to say, the purpose or intent with which they were cast is not in doubt, and the honesty of the voter is not questioned, but it is sought, by one party or the other, to defeat that intent because of some alleged defect or informality, the evident result of innocent awkwardness, mistake or ignorance. To the accomplishment of such an object, we cannot lend our sanction, and seemingly the court might find some more profitable employment. Unless this country has recently undergone a revolution that has escaped our notice, a voter can be lawfully deprived of his suffrage or a popular election can rightfully be quashed for only a few causes, namely, fraud or corruption, intimidation or violence or such gross irregularity as renders the ascertainment of the will of the individual, or of a majority, or a plurality, as the case may be, impossible. If history teaches any lesson relative to the subject, or relative to any subject, for that matter, it is that electors are far less likely to be guilty of malconduct than are election and returning boards, supervisors and inspectors. A requirement of excessive strictness in compliance with technical formalities has in all times been a most facile instrument for defeating the popular will. Less "terrible" but more to be feared than "an army with banners" are intricate and complicated election laws in the hands of skillful and unscrupulous manipulators. It is true that any of the defects or markings of the ballots mentioned in the foregoing classification might have been and may be employed for the purposes of subsequent identification and fraud, but there is not the least suspicion that any of them was so employed, and we think

that there ought to be at least a suspicion of wrong-doing before the courts reverse the famous dictum of Edmund Burke and "indict a whole community."

There is only one class of ballots above mentioned which in our opinion call for special discussion, that is, those that were indorsed by one judge of election and by the initials of another. They are 26 in number and may be regarded as in literal violation of what has been decided to be a mandatory requirement of the statute. They are not a violation of the statute in strict literalness or of its spirit at all. In treating of the indorsement the statute uses the terms "names" and "signatures" interchangeably. A name is a word or words, designation or appellation used to distinguish a person or thing or class from others, and words indicated by single letters are only less adapted to that purpose than words indicated by several letters. A signature is whatever mark, symbol or device one may choose to employ as representative of himself. One of the judges, the initials of whose name were written on 25 of the ballots, was P. A. Buller, and the other whose initials appeared upon one of the ballots was A. J. Flatung. Buller was sworn as a witness and testified to having written the letters on the ballots himself with no sinister intent, which indeed is not suspected. He further testified that he wrote them as, and intending them for, his signature, and that he was accustomed to so using them instead of his full name upon his letters and some of his business documents, particularly weight or scale certificates or checks. The object for which the indorsements are required is evident. It is for the purpose of the identification and authentication of the ballots, so as to render it certain that none not officially issued shall be used for voting. That this object was as effectively accomplished, and as likely so to be, by the means adopted, as it would have been by the use of the full name or of the surname and the first two initials, is not disputed or doubted, and we think the spirit, if not the letter, of the statute was satisfied. The letters written by Buller with his own hand

upon a promissory note or other contractual promise would have obligated him to the full extent in law, and if they had been fraudulently attached to such a document by another, the act would have subjected the offender to criminal prosecution and conviction. It was stipulated that the letters A. J. F. on the remaining ballot were made by the election judge, Flatung, under the same or similar circumstances. In view of our conclusions as to the law which are set forth in the foregoing opinion and in *Bingham v. Broadwell, supra,* we have made a careful examination and recount of all the ballots to which objection was made by either party, and have corrected the tally made by the district court as follows: The district court by its count gave to Bonawitz 1,229 ballots, to which by our count we added 137, making a total of 1,366. The district court gave to Griffith 1,282 ballots, to which we have added 99, making in all 1,381, showing a majority in favor of contestant and appellee of 15 votes.

We therefore recommend that the judgment of the district court be affirmed.

OLDHAM, C., concurs. LETTON, C., took no part in the decision.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.