J. EMIL SMITH

*v.*

FRANK T. REID.

*Opinion filed October 23, 1906—Rehearing denied Dec. 5, 1906.*

1. ELECTIONS—*ballots having clear distinguishing marks should be thrown out.* One of the chief objects of the Australian Ballot law is to preserve the secrecy of the ballot, and hence ballots having marks made by the voter which are clearly distinguishing and destroy their secrecy should be thrown out.

2. SAME—*what are not distinguishing marks.* On a contest of the election of city clerk, names written on four ballots, in pencil, for various offices other than city clerk, the names written in being printed in other places on the ballots as candidates for the same offices for which the names were written in, are not distinguishing marks.

3. SAME—*when the ballots are properly counted.* Three ballots bearing the figure "5" adjacent to one of the names printed on the ballot as candidate for constable, there being five constables to be elected, are properly counted in a contest of the election of city clerk, where there is nothing in the record to show that the voters intended the figure to be a distinguishing mark.

4. SAME—*when a ballot cannot be counted.* A ballot having crosses in the squares opposite the name of each candidate for the office being contested cannot be counted for either candidate.

5. SAME—*lines forming cross must intersect within circle or square.* The lines forming the cross on a ballot must meet or intersect within the circle or square where it is intended to be placed, and the ballot should not be counted if the lines cross entirely outside the circle or square, even though one line of the cross is partly within.

6. SAME—*ballots shown to have been properly preserved are the best evidence.* Ballots are admissible in evidence for what they are worth, even though not first shown to have been properly preserved, and if shown to have been properly preserved are the best evidence.

7. SAME—*effect where parties stipulate that ballots have been properly preserved.* Where the parties to an election contest stipulate that the ballots have been properly preserved, the fact that discrepancies between the number of ballots counted and the number of names on the poll-books exist in seventeen out of twenty-five precincts does not justify the court in disregarding the stipulation, where no fraud is shown with regard to such discrepancies.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

E. S. SMITH, for appellant.

ALBERT SALZENSTEIN, SIDNEY S. BREESE, and CLARK B. SHIPP, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

At an election held April 4, 1905, in the city of Springfield, appellant and appellee were opposing candidates, republican and democratic, respectively, for the office of city clerk. The city council met on April 7, 1905, and found on their canvass of the returns 4719 votes for appellant and 4741 for appellee. Appellee was thereupon declared elected to the office of city clerk by a plurality of 22 votes. A contest was brought in the circuit court of Sangamon county and the ballots were re-counted. The court found that 4726 votes were cast for appellee and 4718 for appellant, and thereupon declared appellee, Frank T. Reid, elected to the office of city clerk and rendered judgment accordingly. From that judgment an appeal has been taken to this court.

The appellee insists that the circuit court of Sangamon county did not have jurisdiction to hear this contest. On this record we are of the opinion that under sections 97 and 98 of chapter 46, Hurd's Statutes of 1905, that court had jurisdiction.

On May 24, 1905, counsel stipulated that the ballots had been properly preserved and that the count should be proceeded with. The ballots were thereupon counted as to city clerk. Without objection 4694 votes were counted for the appellant and 4700 for appellee. Sixty-five ballots returned in the regular ballot-boxes were objected to by counsel. Over the objection of appellant 26 of these disputed ballots were counted for appellee and over the objection of appellee 24 were counted for appellant. The remaining 15 the court

refused to count for either candidate,—making a total on the re-count, as heretofore stated, of 4726 for appellee and 4718 for appellant. We have examined with care the 65 original ballots which were made a part of this record. If the ballots as counted are held to be the best evidence and consistent rules be followed in counting them, by no possibility can the result of the count be changed so as to seat appellant. One of the chief objects of the Australian Ballot law is to preserve the secrecy of the ballot, and in order to effect this, ballots having marks made by the voter which are clearly distinguishing and destroy their secrecy will be thrown out. Ballots 54 and 58 had names written in with pencil for various offices other than city clerk, the names written in being printed in other places on the ballot as candidates for the same office for which their names were written in. These ballots were counted for appellee. Ballots 40 and 44 had names written in in the same manner as candidates for offices other than city clerk, the names so written in being printed on the ballot in other places for the same offices for which they were written in. These two last named ballots were counted for appellant. We think the trial court decided rightly that these ballots should be counted and that the names so written in were not distinguishing marks. But even assuming that the proof did show that the marking of these ballots tended to destroy their secrecy, inasmuch as two were counted for appellant and two for appellee it would not change the final result.

Again, ballots 43, 53, 55, 56 and 61 all had written in with pencil, as candidates for various offices other than city clerk, the names of persons not found printed on any other part of the ballot. These five ballots were all counted for appellant. Ballots 52, 57, 59 and 60 all had written in with pencil, in the same way, for candidates for various offices other than city clerk, the names of persons not found printed on any other part of the ballot. These last four ballots were counted for appellee. It was assumed, we suppose, by

the trial court, that these names were written in by the voter as *bona fide* candidates for the various offices named, and not as distinguishing marks. We see nothing in the record to indicate to the contrary, and under the circumstances the ballots were properly counted. But even assuming that the proof showed that these names were distinguishing marks, then if any are thrown out for this reason all must be,—the five counted for appellant as well as the four counted for appellee. Appellant would thereby suffer a net loss of one vote.

Again, ballots 39, 41 and 42 all had in pencil the figure "5" written in adjacent to one of the names printed on the ballot as candidate for constable. One of these ballots was counted for appellee and two for appellant. There were five constables to be elected. We assume from a study of these three ballots and the manner in which they are marked that the voter thought he would cumulate his vote for constable and therefore marked his ballot in that way. Such figures might easily be distinguishing marks, but there is nothing in this record to indicate that they were in this case. If they were so held, all three ballots would have to be thrown out, and appellant would therefore suffer a net loss of one vote.

Again, ballot 67 has a cross in the square before the name of appellant and one in the square before the name of appellee, and no other mark affecting the candidates for city clerk. This ballot was counted for appellant. We think this was plainly a mistake or oversight. The ballot should not be counted for either of the parties to this suit. Ballot 28 had a pencil cross immediately in front of the democratic circle. One of the lines is wholly outside the circle while the other line of the cross is about one-third within the circle and two-thirds without, but the two lines cross entirely outside the circle. There is no other mark on the face of the ballot. This ballot was counted for Reid. We think it should not be counted for any candidate. The lines forming

the cross must meet or intersect within the proper circle or square to comply with the statute. If the meeting place or intersection of the lines forming the cross is entirely outside the square or circle, as in ballot 28, then the cross is not made in the "proper margin or place opposite the name of the candidate of his choice," and not complying substantially with the statute should not be counted. (*Apple* v. *Barcroft,* 158 Ill. 649.) By not counting said ballots 67 and 28 appellant and appellee lose one vote each and the result is not changed.

If the same line of reasoning be adopted as to the other disputed ballots, including the 15 ballots not counted by the lower court, whether any or all of the ballots are consistently thrown out or any or all consistently counted, appellant can not profit thereby. The result would not be changed.

Appellant practically admits this, but insists in the third precinct of the third ward that the ballots should not be considered in the re-count as there was a discrepancy of 18 between the number of names on the poll-books and the number of ballots actually found on the re-count and counted. He insists that the returns of the judges and clerks as canvassed by the city council ought to be taken in that precinct instead of the ballots, and if these returns are taken and the ballots in the other precincts as counted were added appellant would be elected. As above stated, the parties to this cause stipulated before the ballots were counted that they had been properly preserved. Of twenty-five election precincts in the city of Springfield at this election seventeen show discrepancies between the number of ballots counted and the number of names on the poll-books. In only eight does the number correspond. These discrepancies vary all the way from one to eighteen. The record shows that counsel for appellant knew on June 2 of this discrepancy and he then moved to have the missing ballots produced by appellee, who, as city clerk, was in possession of the returns. After full hearing the court on June 3 overruled this motion, stating that there

was nothing to show that appellee had any of the missing ballots in his possession or knew anything about them. On June 6 appellant for the first time insisted that the ballots from the third precinct of the third ward should not be considered the best evidence but that the returns made by the judges and clerks in this precinct should be taken in the re-count, and he then asked leave to file the poll-books and call the judges and introduce testimony to show that the count at the close of the polls differed from the ballots as found and re-counted on the trial. The court asked him if there was not an agreement that the ballots should be counted and the results found from them. Counsel insisted that that agreement was made with the understanding that the integrity of the ballots had been preserved, and that because of this large discrepancy fraud existed and the integrity of the ballots could not be relied on. One of the judges of election in said third precinct of the third ward had testified at length with reference to this discrepancy several days before and there is nothing in his testimony to indicate fraud. Appellant had four days from the time he knew of this discrepancy to look up the evidence and call in witnesses if he wished them to be heard. He called in only one of the judges. He made no showing, by affidavit or otherwise, to indicate that the ballots in this precinct had not been properly preserved. The trial court stated that it did not see that any fraud had been shown, and did not feel that it could set aside the stipulation as to receiving the ballots as the best evidence unless fraud was shown. We do not find anything in this record to indicate fraud, and agree with the trial court in its findings therein. In more than two-thirds of the precincts there are discrepancies. It is a well known fact to all who have had experience in election matters, that these discrepancies frequently occur without any dishonest intention on the part of the election officials and without their being able to explain how the discrepancies occurred. If the third precinct of the third ward was to be

thrown out because of this discrepancy, by the same line of reasoning the other sixteen precincts might also be thrown out. There is no showing in this record by which any distinction could be drawn between these various precincts, showing that in some the ballots were properly preserved and in others not. If these seventeen precincts were thrown out and the original returns of the judges and clerks taken in these seventeen precincts and the ballots themselves taken as to the other eight precincts as counted in this contest, the result would be 4700 for appellant and 4755 for appellee,— a much larger plurality than he had either by the original returns or on the re-count by the lower court.

Under our law the ballots can be admitted in evidence without its first being shown that they have been safely kept by the proper custodian,—not as the best evidence, but for what they are worth. (*Bonney* v. *Finch,* 180 Ill. 133; *Catron* v. *Craw,* 164 id. 20; *Caldwell* v. *McElvain,* 184 id. 552.) The ballots are the best evidence if it is shown that they have been properly preserved, and if they have not been, the returns should not necessarily be accepted as conclusive. No inflexible rule that either the ballots or the returns should be conclusive of the result can be made. The result must be determined from a consideration of both, in connection with all the facts and circumstances surrounding the case. (*Jeter* v. *Headley,* 186 Ill. 34; *Dooley* v. *Van-Hohenstein,* 170 id. 630; *Caldwell* v. *McElvain, supra.*) The discrepancy of 64 between the number of names on the poll-books and the number of ballots found has not been accounted for or attempted to be accounted for in the record, except in the case of seven ballots in the first precinct of the second ward. These ballots appellee insisted the court ought to count, but the court refused. We are not prepared to hold, on the proof offered, that these ballots should have been counted, but if they were, none of them could be counted for appellant and at least five of them should be counted for appellee. Of the remaining 57 ballots that were

not accounted for, there is no presumption existing that any of them, either the 18 in the third precinct of the third ward or any of the others, should be counted in any given way.

We are of the opinion that on the record before us the lower court was justified in holding that the ballots as returned and as re-counted should be taken as the best evidence, and that said court committed no reversible error in re-counting said ballots.

The judgment of the circuit court will therefore be affirmed.

*Judgment affirmed.*