R. L. MENEES *v.* F. E. EWING.

(*Nashville.* December Term, 1918.)

**ELECTIONS. Method of designating candidate. Mandatory provision..**
Shannon's Code section 1248, as to voter designating candidate of
his choice by a cross (X), is not mandatory in the sense that a
voter who uses a different mark, such as a check mark, will be de-
prived of his vote even when the intention is clear and obvious
in view of section 1255; the provision of the latter section that
none but ballots provided in accordance with the article shall be
counted having reference to ballots described in section 1233 et
seq. and not to manner of marking ballots.

Cases cited and approved: Parker v. Orr, 158 Ill., 609; Rail v. Potts
et al., 27 Tenn., 225.

FROM MONTGOMERY.

Appeal from the Circuit Court of Montgomery
County.—HON. W. L. COOK, Judge.

WM. DANIEL, JR., and AUSTIN PEAY, for appellant.

DANCEY FORT, for appellee.

MR. CHIEF JUSTICE LANSDEN delivered the opinion of
the Court.

This is an election contest over the office of justice of
the peace in the First district of Montgomery county.
The suit was instituted in the county court and carried
from thence to the circuit court of the county. Both
courts held that the contestee, Ewing, was duly and
legally elected as shown by the return of the officers of

election. An appeal was prosecuted to this court, and errors have been assigned, which present a number of questions, but the only matter of public interest is the question presented upon the two ballots cast for contestee marked with a check mark instead of a cross mark.

We are satisfied that the ballots were preserved so that the ones inspected by the county judge, and later by the circuit judge, and presented for our inspection, are the true ballots deposited in the ballot box by the voters. It was so held in the county court and the circuit court, and there is evidence to support the holding.

As to the other ballots counted for contestee, and which present the question of fact as to whether the voters intended to place the cross mark opposite the. name of contestee, we are satisfied with the holding of the county and circuit courts, which were in accord with the action of the election officials. By a personal inspection of the ballots all of these authorities concluded that the voters designated contestee in a proper manner by the making of the cross mark opposite his name. We affirm their action as to this.

As to the ballots upon which the name of contestee was designated by a check mark. The point made against these ballots is that the voters used a check mark instead of a cross mark. No point is made that the mark used could designate any other name than that of contestee, and that the voter intended to designate another than him as his choice for the office of justice of the peace. It is insisted that the statute having designated a cross mark (X) as the way by which

voters are to select their choice of candidates, no other mark can be allowed; the insistence being that the language of the statute is mandatory, and the court has no discretion in the matter.

The Dortch Ballot Law originated in the act of 1890 First Extra Session, chapter 24. So far as we are advised it has not been construed by this court with respect to the question presented in this case. An examination of the statute discloses that it inagurated a new method of voting in the territory to which it has application. It designates the ballot and the manner of issuing them as well as the way in which the voter shall cast his vote. The main purpose of the act is to secure privacy upon the part of the voter in casting his ballot and to secure purity in the elections. After describing in considerable detail how the election booths are to be established, the ballots are to be furnished, the kinds of ballots, and other details respecting the election, the marking of the ballot by the voter is set forth in the following language found at section 1248 of Shannon's Annotated Code.

"He shall then go to one of the voting shelves, tables, or compartments, and shall prepare his ballot by marking in the appropriate margin or place a cross (X) opposite the name of the candidate of his choice for each office to be filled, or by filling in the name of the candidate of his choice in the blank space provided therefor and marking a cross (X) opposite thereto, and likewise a cross opposite the answer he desires to give in case of a constitutional amendment."

The act then describes how the ballot is to be folded and the stub torn off, the manner and time of voting, to prevent repeating, who are allowed in the room, spoiled ballots, assistance to physically disabled voters,

141 Tenn.—26.

and then describes what are known as improperly marked ballots. This provision is found in section 1255 of the foregoing Code, and is as follows:

"If the voter marks more names than there are persons to be elected to an office, or if for any reason it is impossible to determine the voter's choice for any office to be filled, his ballot shall not be counted for such office. But this shall not vitiate the ballot so far as properly marked. No ballot without the official indorsement of the chairman of the board of commissioners shall be deposited, and none but ballots provided in accordance with the provisions of this article shall be counted."

It will be perceived that section 1248 sets forth in detail the manner in which the voter shall cast his ballot, and designates how the candidates of the voter's choice are to be pointed out by him, and the designation selected by the legislature is the cross (X) opposite the name of the candidate. Anticipating that some of the ballots will be improperly marked, section 1255 points out the effects of improperly marking them. It is seen that it is there provided if the voter marks more names than there are persons to be elected to an office, or if for any reason it is impossible to determine the voter's choice for any office to be filled, his ballots shall not be counted for such office. But to prevent a misunderstanding of the language employed, the legislature expressly provided that such was not to vitiate the ballot so far as properly marked. It is specified, however, that ballots which are not provided in accordance with the provisions of this article are not to be counted. We think the reference last made is to ballots described in section 1233 et seq., and not to the manner

of marking ballots. The legislature designated the cross (X) as the proper way to designate the candidate for whom the voter was voting, but it did not intend by this designation to deprive a voter of his vote if he had so marked his ballot that his intention was made clear and obvious to the officers of election. We think this is shown by the two sections of the act set forth in this opinion. To deprive a voter of his vote when he makes his choice clear and obvious is such an act of apparent injustice that the intention to do so will not be ascribed to the legislature, unless the language employed by it in reference to the matter is plain and unambiguous. It cannot be assumed that the legislature intended to deprive a voter of his choice merely upon the form of the mark employed to designate the candidate voted for. This all assumes what is not denied in this case, that the voter employed a method of designating the candidate for whom he intended to vote, which was clear.

Of course, what has been said cannot have application to marks or insignia, which are used upon the ballot for the purpose of designating a particular candidate, or candidates, for whom the voter should vote. It has effect only in those cases in which the intention of the voter to designate the candidate of his choice by the unusual mark is clear and satisfactory. 9 Ruling Case Law, 132; 15 Cyc., 353; *Parker* v. *Orr*, 158 Ill., 609, 41 N. E., 1002, 30 L. R. A., 230. See, also, *Rail* v. *Potts et al.*, 8 Humph., 225.

The clear weight of authority is to the effect that the method of marking the ballot is not mandatory in the sense that the voter will be deprived of his vote if it

Menees v. Ewing.

is clear that the only question involved is the use of the mark by the voter to designate his choice. Each State has an act upon the subject with more or less divergence from our own, and, of course, the cases upon the subject, of which there are many are only persuasive.

Affirmed.