PETERSON, Appellant, v. BILLINGS, Respondent.

(No. 7,987.)

(Submitted October 27, 1939. Decided December 4, 1939.)

[96 Pac. (2d) 922.]

*Messrs. Busha & Greenan,* for Appellant, submitted a brief; *Mr. Philip G. Greenan* argued the cause orally.

*Mr. Louis P. Donovan,* for Respondent, submitted a brief; and argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This is an appeal from the judgment of the district court of Teton county. At the general election held November 8, 1938, in that county, the names of three candidates for the office of sheriff appeared on the official ballot. The name of the appellant appeared in the republican column and the name of the respondent in the independent column. The official canvass resulted in the election of appellant. The canvass gave to him 955 votes and to respondent 951 votes.

Thereafter, upon the proper application, a recount of the votes was had in certain precincts, this time resulting as follows: Appellant 953; respondent 955. Later a recount and a recanvass of all the ballots was had with the result that appellant received 947 and respondent 949. A petition to contest the election of respondent was filed in the district court by appel-

lant and the matter was there heard. The record before the court on that hearing consisted of 47 disputed ballots which ballots were certified to this court. Upon the trial in the lower court it was found that respondent secured 950 votes and the appellant 947 votes, and a judgment was entered declaring the election of the respondent to the office of sheriff and judgment in favor of the respondent for attorney's fees was awarded in the sum of $250, in addition to costs and disbursements expended in the matter by respondent.

Appellant assigns 45 specifications of error and the respondent sets up one cross assignment of error. It will not be necessary to discuss each of the assignments separately, nor will it be necessary, as it will later develop, to discuss all of the 47 ballots certified to the court. The ballots certified include ballots counted for respondent which appellant contends were so marked by writing in unnecessary names, extra crosses and by erasures so as to identify them contrary to the provisions of the statute. The ballots certified which were not counted for the appellant are in general ballots which were excluded by reason of the insufficiency of the marking used by the voter to indicate his choice of the appellant for the office of sheriff.

Ballot Plaintiff's Exhibit 29a is one in which the voter placed a rather indistinct "X" before appellant's name. He voted for no other candidate for sheriff. The "X" is discernible and there was no erasure. The ballot should have been counted for appellant.

Exhibit No. 1 or 1a was improperly counted for respondent. The elector marked two squares for sheriff thus:

⊠ Delwo ⊠ Billings

This extra line through the square before Delwo's name might indicate the elector first voted for Delwo and then changed his mind, but other squares marked for a particular candidate where the voter marked no other square for the same office show marks similar to that put before Delwo's name. The voter marked the square before Dr. H. W. Bateman, candidate for state senator, in this manner  and the square before the

name of Otto Wagnild, candidate for county assessor thus ⊠ , and the square before the name of Geo. A. Carroll, candidate for county clerk thus ⊠ . The mark before the name of "Delwo" is much the same as the mark the elector made before the names of candidates where he voted for only one for the office. We cannot conjecture as to whether it was the voter's intention to vote for Delwo or for Billings, or both. Before a vote may be counted it must plainly appear what the intention of the voter was. Here the intention was not clear.

Exhibit No. 5 was a ballot which was not counted for either candidate. The voter evidently attempted to vote for Peterson, but the intersection of the "X" is not within the square before his name, but appears thus: ⊠ Albert Peterson

The lower court apparently relying on the case of *Carwile* v. *Jones*, 38 Mont. 590, 101 Pac. 153, 155, ruled out the ballot. In the *Carwile Case* the voter did not make any mark in the square preceding the name of the candidate, but placed an "X" in the square before the blank space below the candidate's name. In ruling that the voter did not comply with the statutory requirement this court said, " * * * to constitute a substantial compliance with the law, at least the point of intersection of the two lines forming the cross must be within the square before the candidate's name. (*Parker* v. *Orr*, 158 Ill. 609, 41 N. E. 1002, 30 L. R. A. 227; *In re Hearst*, 48 Misc. 453, 96 N. Y. Supp. 119; *Rexroth* v. *Schein*, 206 Ill. 80, 69 N. E. 240; *McKittrick* v. *Pardee* [supra, 8 S. D. 39, 65 N. W. 23]; 9 Current Law 1050; *Smith* v. *Reid*, 223 Ill. 493, 79 N. E. 148.) "

The statement that the intersection must be within the square before the candidate's name was gratuitous in the opinion as no part of the "X" was either in the square nor before the name. The quotation is wholly a matter of *dictum*. Even if the statement were not *dictum* the cases, except one, cited by this court in that decision as authority for the pronouncement that the intersection must be within the square are not in point or are contrary to the rule announced. *Parker* v. *Orr*, supra, involves

a statute which does not contain any reference to a square and no language of the decision can be found to support the statement made by this court. The decision does hold the statutory provision as to the manner of making the cross to be directory and not mandatory, and then says: "It has always been held in this state that if the intention of the voter can be fairly ascertained from his ballot, though not in strict conformity with the law, effect will be given to that intention. In other words, that the voter shall not be disfranchised or deprived of his right to vote through mere inadvertence, mistake, or ignorance, if an honest intention can be ascertained from his ballot."

The court in *In re Hearst,* supra, was considering the matter of marked ballots. The ballot being considered was one where the lines of the "X" extended beyond the square although the intersection was within the square and anything said as to the necessity of the intersection being within the square is *dictum.*

In *Rexroth* v. *Schein,* supra, the cross was entirely outside the square. Nothing is said as to intersection. *Smith* v. *Reid,* supra, holds that the intersection must be in the square. *McKittrick* v. *Pardee,* supra, is not authority for the proposition as there no cross or part of a cross was in the square and nothing is said about the intersection.

We do not believe that our statute merits the interpretation given by this court in the *Carwile Case.* Section 696 provides: "He shall prepare his ballot by marking an 'X' in the square before the name of the person or persons for whom he intends to vote." Section 777 provides: " * * * any ballot * * * from which it is impossible to determine the elector's choice is void and must not be counted; if part of a ballot is sufficiently plain to gather therefrom the elector's intention, it is the duty of the judges of election to count such part."

"It is a general rule that election laws must be liberally construed. This court, in *Stackpole* v. *Hallahan,* 16 Mont. 40, 40 Pac. 80 [28 L. R. A. 502], on page 57, 16 Mont., and page 85, 40 Pac. announces that 'in the construction of election laws the whole tendency of American authority is towards liberality,

to the end of sustaining the honest choice of the electors.' The reason for this rule is that the paramount and ultimate object of all election laws under our system of government is to obtain an honest and fair expression from the voters upon all questions submitted to them." (*Dickerman* v. *Gelsthorpe*, 19 Mont. 249, 47 Pac. 999, 1001.)

"But if, from the marking of the ballot in substantial compliance with the law, the intent and choice of the voter clearly appear, then his ballot should be counted, unless the statute expressly or by clear inference forbids it; otherwise the true spirit of the election law might be violated by subordinating the essence to a mere element of detail, and substance might be sacrificed to form. The elective franchise is not conferred upon the citizen by the legislature, or by virtue of legislative enactments. The right to vote is a constitutional right, and is one of the bulwarks of our form of government and system of civil liberty." (Id., 20 C. J. 154, 18 Am. Jur. 302, and many cases therein cited.) This is particularly true where there is a statutory provision similar to our section 777. The majority rule is that the ballot should be counted if the "X" is only partly within the square if the voter's intention is clear and it is apparent he made an honest attempt to comply with the law even though the intersection is without the square. (20 C. J. 158.)

We believe this is doubly true in this state since unlike many states our statute contains no provision that the vote be not counted if the "X" is not within the square and in view of the provisions of our section 777. The intention of the voter to vote for Peterson is clear.

Respondent assigns as cross error the counting of Ballot Exhibit 32a for appellant. On that ballot the intersection of the cross is squarely on the line of the square. The ballot was properly counted for Peterson—particularly in view of what we have said above.

Ballot Plaintiff's Exhibit No. 9 was one in which the elector marked the squares before the various candidates, including Peterson, with a check mark, thus ☑. The trial judge

ruled that it could not be counted for Peterson. We think the court erred in excluding the ballot. The statutory provisions of the state of Tennessee are substantially the same as ours with respect to the manner of voting, i. e., section 1248 of Shannon's Ann. Code Tenn. provides: " * * * and shall prepare his ballot by marking in the appropriate margin or place a cross (X)." Section 1255 of their code provides: " * * * if * * * it is impossible to determine the voter's choice for any office to be filled, his ballot shall not be counted for such office." The latter provision is similar to our section 777. The Tennessee court in *Menees* v. *Ewing,* 141 Tenn. 399, 210 S. W. 648, 649, held that a ballot marked as was plaintiff's Exhibit 9, should be counted. Although *Carwile* v. *Jones,* supra, holds that there must be an "X" with two lines intersecting, we believe reason and justice support the Tennessee court and especially the following language from the opinion: "The legislature designated the cross (X) as the proper way to designate the candidate for whom the voter was voting, but it did not intend by this designation to deprive a voter of his vote if he had so marked his ballot that his intention was made clear and obvious to the officers of election. We think this is shown by the two sections of the Act set forth in this opinion. To deprive a voter of his vote when he makes his choice clear and obvious is such an act of apparent injustice that the intention to do so will not be ascribed to the legislature, unless the language employed by it in reference to the matter is plain and unambiguous. It cannot be assumed that the legislature intended to deprive a voter of his choice merely upon the form of the mark employed to designate the candidate voted for. This all assumes what is not denied in this case, that the voter employed a method of designating the candidate for whom he intended to vote, which was clear."

We believe the correct rule is properly stated by Wigmore in the second edition of his Australian Ballot, page 193: "Wherever our statutes do not expressly declare that particular informalities avoid the ballot, it would seem best to consider their requirements as directory only. The whole purpose of the ballot

as an institution is to obtain a correct expression of intention; and if in a given case the intention is clear, it is an entire misconception of the purpose of the requirements to treat them as essentials, that is, as objects in themselves, and not merely as means.''

Many states construe the statute to be mandatory. '(18 Am. Jur. 301.) Yet, in the states so holding, the interpretations of the courts as to what constitutes compliance are so diverse that the only rule to be deduced from the decisions is that any mark is sufficient if it shows an honest intention on the part of the elector to make an ''X.'' The courts holding thus seem to do so on the theory that any mark not in any way showing an effort to make an ''X'' indicates an attempt on the part of the elector to mark his ballot so that it may be identified. Typical of the language used is that found in two cases holding a check mark insufficient. In *Hunt* v. *Campbell*, 19 Ariz. 254, 169 Pac. 596, 611, the court uses this language: ''It evinces an honest effort to comply with the law,'' and later in speaking of another ballot, ''if the elector intended to express a choice for Governor he wilfully disobeyed the statute by failing to indicate his choice with an 'X.' '' And, ''There is indicated no honest effort to mark a cross, but the elector evinces a willful disregard of the statute.''

The court says in *Grubb* v. *Turner*, 259 Ill. 436, 102 N. E. 810, 812, ''Unless there is an honest attempt on the part of the voter to comply with this provision of the law his ballot will be rejected.'' The writer in 20 C. J. 156 states the rule thus: ''Where there has been an attempt in good faith to follow the law in making the cross * * * the fact that the cross is imperfect will not prevent the ballot from being counted.''

The emphasis in these excerpts is on the honesty and good faith of the elector and indicates that the rule is applied on the theory that a mark other than an ''X'' indicates a purpose on the part of the elector to identify his ballot, contrary to the provisions of the statute. What is said in those cases should be limited to the situation where something appears by the nature of the mark or surrounding circumstances which indi-

cates an attempt to identify the ballot. That condition does not here appear, but rather the conclusion is inescapable that the use of the check mark by the elector was through inadvertence or mistake. The cases following the mandatory rule count so many diverse marks as crosses in an attempt to give effect to the voter's intention, and the courts adopt such inconsistent interpretations as to what constitutes a good faith attempt to make an "X" that the matter resolves itself into a situation where each election judge must make split hair decisions as to whether two lines cross, or whether they merely meet, making some sort of "V."

Some courts following the mandatory rule require the extension of one of the lines beyond the other at the intersection before the mark can be considered an "X." On the other hand, some of these courts hold that a mere "V" is sufficient. What is said as to the "V" may also be said as to many other types of marks.

In many states which follow the so-called mandatory rule, there are express statutory provisions which prohibit the counting of any ballot not marked as provided by the statutes. Thus in the case of *Evans* v. *Reiser*, 78 Utah, 253, 2 Pac. (2d) 615, 621, the statutory provision involved, Compiled Laws Utah, 1917, section 2217, provides: "Any ballot marked by the voter in any other manner than as authorized in this chapter shall be rejected."

In the many California decisions which hold the provisions mandatory, as in the case of *Sweetser* v. *Pacheco*, 172 Cal. 137, 155 Pac. 639, the statutory provision construed provides that "In voting he shall stamp a cross (X) in the voting square. * * * All crosses shall be made only with a stamp."

And in section 1211 of the Political Code of California the following provision appears: "In canvassing the votes any ballot which is not marked * * * as provided by law shall be void."

In Iowa the provision of section 815 of their Code of 1935 provides: "The ballot shall be counted according to the mark-

ings thereon, * * * as provided in sections 809 to 814, inclusive, and not otherwise."

The South Dakota court, in *Vallier* v. *Brakke*, 7 S. D. 343, 64 N. W. 180, held the provisions as to marking the ballot mandatory, for the reason that the South Dakota statute specifically provides, in section 7278, Comp. Laws of South Dakota 1929, " * * * that when the 'X' marks * * * are sufficiently plain to gather therefrom a part of the voter's intention, it shall be the duty of the judges of election to count such part." In other words, unlike section 777 of our Codes, their provision is in effect that the intention can only be gathered from the use of the voting mark provided by law.

What has been said as to the statutory provisions in the foregoing cases is true of the provisions of other states cited in the texts as authority for the proposition that the provisions in the statute are mandatory. For example, the statutes of the state of New York provide that any other mark than an "X" shall void the ballot.

As has been indicated above, running through all the cases—those holding the statute mandatory as well as those holding it directory—is the rule of construction against disfranchisement, if such construction can be given without violating some express prohibitory provision of the statute. Since our statutory provision does not prohibit the counting of the ballot not marked with an "X," and since the test applied by section 777 is based on the clarity of the expression of intention on the part of the voter, we believe the rule of construction stated must apply.

We submit the better rule, where there is no express statutory prohibition is that the statutory provision as to the matter of marking is directory only, and that the one test to be applied is: Does the ballot without question from its markings show the elector's intention to vote for the particular candidate? If it does, it must be counted.

By our section 777 that test is adopted by the legislature, and it should be followed. Any question as to the interpretation to be given by this court to the provisions of section 696

is resolved by the provisions of section 777. The portions of that section heretofore recited provide that the vote must be counted if the "ballot is sufficiently plain to gather therefrom the elector's intention," and that the ballot must not be counted if "it is impossible to determine the elector's choice." The legislature then has laid down an exclusive rule as to what ballots must or must not be counted. Had it been the intention of the legislature to void the ballot if an "X" were not used to indicate the choice of the voter, it could have, as many other states have, adopted the provision that unless an "X" were used, the ballot is void; or certainly the legislature would have in section 777 made some allusion to the manner of marking, had it intended to adopt such a rule.

This court should not by conjecture that the provisions of section 696, as to the method of marking the ballot, are mandatory, nullify the provisions of section 777. That section is clear and positive to the effect that judges must count the ballot if the intention of the voter can be gathered therefrom. To hold section 696 mandatory, as was done in the case of *Carwile* v. *Jones,* supra, and to exclude this ballot marked with a check mark, which without any question shows the voter's intention, would be to wholly disregard section 777, and to, by judicial interpretation, repeal or amend that section.

The Nebraska court in *Griffith* v. *Bonawitz,* 73 Neb. 622, 103 N. W. 327, 329, in speaking of the effect of their statutory provisions, substantially the same as our sections 696 and 777, uses the following language, which expresses our views as to the interpretation to be given our statutory provisions. To begin with the court said: " * * * it is sought * * * , to defeat that intent [the voter's intent] because of some alleged defect or informality, the evident result of innocent awkwardness, mistake, or ignorance. To the accomplishment of such an object we cannot lend our sanction, and seemingly the court might find some more profitable employment." In *Bingham* v. *Broadwell,* 73 Neb. 605, 103 N. W. 323, the court said: " 'Whatever may be said of the Australian system, a glance at the ballot at a general election is sufficient to convince any one

that it is not an easy thing for a person of common understanding to intelligently and without a chance of mistake express his wish. A person accustomed more to the plow or the plane than to the pen would almost certainly be confused when he is ushered into a dark booth, with this ticket and its multifarious provisions and its immense dimensions spread out before him. Indeed, it is probable that the most careful business man, who has been accustomed to perusing and executing documents of a business character, will have grave misgivings as to the correctness of his vote when he leaves the booth. And to hold that every misconception of the printed directions of the law would deprive an elector of his vote would certainly be a holding not within the contemplation of the Legislature which passed the statute, for it has been careful to provide that, when a ballot is sufficiently plain to gather therefrom a part of the voter's intention, it should be the duty of the judges of election to count such part.' * * * 'If his ballot is rejected, it must come within the letter of the prohibition; and, when the statute specially declares under what conditions the ballot should be rejected, courts should not enlarge these conditions, or make other or different conditions from those embraced in the statute grounds for rejecting the ballot. It will be noted that our statute provides only one condition under which a ballot should be rejected, namely, a ballot from which it is impossible to determine the elector's choice; and, after all, this should and must be the intent of the Legislature. The important thing is to determine the intention of the voter, and to give it effect.' To the same effect are *Howser* v. *Pepper,* 8 N. D. 484, 79 N. W. 1018; *Attorney General* v. *Glaser,* 102 Mich. 405, 61 N. W. 648; *State* v. *Sadler,* 25 Nev. 131, 58 Pac. 284, 59 Pac. 546, 63 Pac. 128, 83 Am. St. Rep. 573; *Tandy* v. *Lavery,* 194 Ill. 372, 62 N. E. 774.'' (*Griffith* v. *Bonawitz,* 73 Neb. 622, 103 N. W. 327.)

We therefore hold that the provisions of section 696 are directory and the ballot should be counted for appellant.

What we have held heretofore in examining the ballots discussed results as follows: Appellant received three votes not counted for him, which gives him a total of 950 votes, while

one ballot was counted for respondent improperly so that he has now a total of 949 votes. The rest of the ballots certified to us and upon which errors were assigned are ballots counted for respondent or not counted for appellant, and as to action of the court on them respondent does not complain. Except for the one ballot already discussed, none of them were counted for appellant, therefore affirmance of the action of the lower court as to these ballots would leave the final result for appellant 950 votes, for respondent 949. If error were found in the action of the court below in its decision on these ballots not discussed the result would have to be that more votes would be counted for appellant or fewer for respondent. Any change would increase appellant's margin either by counting more votes for him or fewer for respondent. Since examination of the balance of the ballots would not change the outcome from that obtained by the examination of the ballots discussed, we need not consider them.

We find without examining the further specifications on the part of appellant that on the basis of the certified exhibits and the stipulations of counsel the lower court should have found that appellant received 950 votes and the respondent 949.

The judgment of the lower court is reversed with directions to find in accordance with this decision and to declare the appellant elected to the office of sheriff of Teton county, and to award to the appellant attorney's fees and costs.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN and ARNOLD concur.

MR. JUSTICE MORRIS:

I dissent. It is not important as to which of the parties of this controversy shall prevail except as it affects their own fortunes, but it is vitally important that this court observe legislative mandates as to the construction of statutory provisions, and it is likewise vital that we conform to the rule of *stare decisis* and not overrule former decisions of this court unless the reasoning in such cases is clearly unsound and the construc-

tion of statutes clearly erroneous. This much we owe to the many eminent jurists whose learning and profound reasoning we find in many decisions in the Montana Reports.

Time after time this court, like the good mariner who keeps the chart showing his correct course ever before him, has repeated either literally or in substance the solemn admonition of our section 10519, Revised Codes, which is to the effect that in the construction of a statute or an instrument it is not the office of the judges, whether they be judges of election or judges of the courts, to "insert what has been omitted, or omit what has been inserted." (*Siuru* v. *Sell,* 108 Mont. 438, 91 Pac. (2d) 411, 413, 123 A. L. R. 423.) In that case we said: "We have neither the power nor the right to read the word 'originally' or language of similar import into the statute. Our office 'is simply to ascertain and declare what is in terms or in substance contained therein.' "

Section 696, Revised Codes, provides amongst other things that the " [voter] *shall* prepare his ballot by marking an 'X' in the square before the name of the person or persons for whom he intends to vote." In reversing the district court it was necessary for the majority to disregard the plain letter of this statute and in addition overrule a former well-reasoned and frequently cited case by this court—*Carwile* v. *Jones,* 38 Mont. 590, 101 Pac. 153, 155.

As to Exhibits 5 and 9, it appears perfectly clear to me that the majority opinion has sacrificed the plain and mandatory requirements of the statute in an unwarranted effort to give effect to the *apparent* intention of the voter. The ballot represented as Exhibit 5 discloses an "X" having its intersecting lines without the square. This is clearly not in accord with the statutory requirement and directly in conflict with the rule laid down in *Carwile* v. *Jones,* supra. The language used in that decision is held by the majority to be *dictum* wherein it says: "At least the point of intersection of the two lines forming the cross must be within the square before the candidate's name."

Instead of being *dictum,* it was of the very essence of the matter there under consideration. The decisive question at issue being whether an "X" without the square before the candidate's name constituted a vote for that particular candidate. Admitting, contrary to the fact, however, that that part of the opinion referred to by the majority in the *Carwile Case* was *dictum* in that case, there can be no question that in the case. at bar it is sound law and supported by ample authority and sound reasoning. To be sure the "X" in the ballot, which the majority said should be counted for the contestant, was close to the square provided on the ballot, but close is at best but a relative and flexible term, and if the cross may be outside the square, the question immediately arises, How far outside before it shall not be counted? Under the reasoning of the majority, if it were at the other side of the ballot there would still be room for assuming that it was the voter's intention to vote for the particular candidate. The rule laid down in the *Carwile Case* provides a definite and certain criterion for the guidance of election officers and the voters, and when the rule is departed from we at once enter the realm of speculation and conjecture as to the intention of the voter.

It seems most unfortunate that this court should feel disposed at this time to abrogate plain statutory requirements and the able precedent of the *Carwile Case,* which the present decision certainly overrules in two particulars, namely, the "X" may be outside the square and the "X" may be dispensed with and another mark used. If the requirements of the statute are harsh or too technical, a view I do not entertain, the remedy is with the legislature.

I have frequently heard former prominent members of this court say that when the number of our Supreme Court Reports should reach 100 that we would seldom have occasion to go abroad to find authority to aid the court in arriving at a decision. This is a practice that is followed very generally by the courts of the older states; i. e., they are first guided by their own laws and decisions and it is only when questions are new and have not been fully determined in the home. jurisdic-

405

tion that authorities are sought from others. And it seems to me if that practice is ever going to be applied in this jurisdiction, certainly the case at bar is one where it should be observed in view of the fact that we have a plain statutory provision and a clear, well-reasoned decision of this court on the very points at issue in the action at bar.

However, as the majority has disregarded our own statute and our own decision directly in point (*Carwile* v. *Jones,* supra), heretofore mentioned, I shall likewise cite some authorities from other jurisdictions. The matter was aptly and logically stated in *Vallier* v. *Brakke,* 7 S. D. 343, 64 N. W. 180, cited in *Murray* v. *Waite,* 113 Me. 485, 94 Atl. 943, Ann. Cas. 1918A, 1128, 1139, wherein the court said: "There was much discussion on the argument and in the briefs of counsel as to the duty of judges of election and courts to carry out the intention of the voter. This is true to a certain extent; but, as the legislature has required *the elector to express his intention by certain well-defined markings upon his ballot, his intention must be determined by these markings, and not by the uncertain and undefined ideas of the judges of election, or by the courts, as to his intention.* [Italics supplied.] The legislature has clearly and precisely defined the manner in which the elector may designate the candidates for whom he desires to vote, and has prescribed definite and fixed rules to govern the voter in designating such candidates. As before stated, the system is simple, and there is no difficulty in the elector's complying with the rules. In our view, it is neither the duty of judges of election nor the courts to fritter away the benefits of the system by strained efforts to get at the intention of the voter in any manner other than by following the rules prescribed by the legislature. If the elector does not take interest enough in his vote to follow these simple and easily understood rules, he can complain of no one if his vote is not counted. A system so simple and plain, and which can be comprehended by any elector of ordinary intelligence in a few minutes, must be followed. There can be no excuse for not following it."

As further indicative of the fact that the legislature intended that voters should evidence their choice of candidates exclusively in the manner prescribed by statute are sections 698 and 699, Revised Codes. These sections expressly provide the remedies for voters in the event emergencies arise at elections where ballots are spoiled by improper markings or erasures, or where by reason of some physical or mental disability a voter is unable to mark his ballot. As properly stated by the Utah Supreme Court in *Evans* v. *Reiser,* 78 Utah, 253, 2 Pac. (2d) 615, 625: "If a voter does not know how to prepare his ballot, he may call upon the judges of election to assist him. If perchance through accident or mistake a ballot is spoiled, defaced, or improperly marked, ample provision is made for the voter to secure a second and a third ballot." Montana voters are equally as well provided for by the express statutory provisions mentioned, and it is needless therefore, for anyone to run the chance of casting an improperly marked ballot when such readily available remedies are theirs for the asking.

After citing various authorities *pro* and *con* it was said in a note in Ann. Cas. 1918A, page 1136, "The majority rule, however, seems to be that a statute prescribing the marks to be used by a voter in indicating his choice is mandatory."

Some fourteen states are given as authority for this rule.

In the case of *Allen* v. *Fuller,* 332 Ill. 304, 163 N. E. 675, 679, it was said:

"The lines forming the cross in Respondent's Exhibit 44 extend partly within and partly without the square. The lines must cross within the square to comply with the requirement that the voter indicated his preference by a cross in the square. (*Grubb* v. *Turner,* 259 Ill. 436, 102 N. E. 810; *Sievers* v. *Hannah,* 296 Ill. 593, 130 N. E. 361.) A careful examination of the ballot shows that the lines cross within the square, though the ends of two of the lines extend outside of it. The objection was properly overruled.

"The lines in Respondent's Exhibit 46 cross outside the square, and for that reason the objection to it should have been sustained, instead of overruled, as it was; and for the

same reason the objection to Exhibit 65 was properly sustained."

In the case of *Donlan* v. *Cooke*, 212 Iowa, 771, 237 N. W. 496, 498, it was said: "In some of the ballots, crosses were placed thereon which were not placed in the square as required by law. It is conceded by all parties that these ballots should not be counted."

In the case of *Wiggins* v. *State*, 106 Fla. 793, 144 So. 62, 63, it was said: "Only ballots where the voter has indicated his choice by the use of an X-mark, that is, by a cross-mark of some character, should be counted. The use of any other mark than a cross-mark could be used as the vehicle of fraud and identification of the ballot. Therefore, we hold that the provision of the statute which requires the use of a cross-mark to indicate the choice of the voter is mandatory. Neither will the fact that a voter has placed his cross-marks opposite the names of two candidates where only one is to be nominated vitiate the ballot, as it applies to other candidates properly voted for."

In *Sweetser* v. *Pacheco*, 172 Cal. 137, 155 Pac. 639, 641, it was said: "The trial court did not err in refusing to count as a vote for Sweetser either ballot 'Novato 1–15' or ballot 'Novato 2–8.' On the former all the crosses, including the only cross opposite Sweetser's name, were stamped in the rectangular space at the right of the name, but none of the stamps was either wholly or partly within the voting square. Under the law as it now is and has been ever since the year 1903, the only way in which a voter can indicate his intent to vote for a particular candid te is by stamping a cross in, or at least partly in (see section 1211, Pol. Code), the voting square, the provisions of section 1205, Political Code, being mandatory in this regard. Any other method is legally ineffectual to express an intent to vote for a particular candidate, by reason of the express language of this section providing how, and how only, the intent shall be indicated. This is made manifest by what is said by this court as to the mandatory character of section 1205, Political Code, in regard to the method of indicating a

vote, in *Tebbe* v. *Smith*, 108 Cal. [101] 109, 41 Pac. 454, 29 L. R. A. 673, 49 Am. St. Rep. 68, *Huston* v. *Anderson*, 145 Cal. [320], 333, 78 Pac. 626, and *Tout* v. *Hawkins*, 143 Cal. 104, 106, 76 Pac. 897. As that section now is, the voter who has omitted to stamp his cross in, or at least partly in, the voting square, opposite the printed name of a particular candidate, has not voted for that candidate. The case is simply one of no vote. As to ballot 'Novato 2–8,' all the crosses, including that in the voting square opposite Sweetser's name, were made with a lead pencil. What we have already said applies also to this ballot. In view of the provisions of section 1205, Political Code, the intent of the voter to vote for a particular candidate whose name is printed on the ballot can be expressed only by *stamping* a cross in, or at least partly in, the voting square. Lacking such stamped cross, the ballot cannot be counted for such candidate, even though the courts may feel that the voter in fact intended so to vote. The express language of the law forbids it.''

What has been said above by other jurisdictions in regard to the voter being required to place the cross within the square applies to a great extent to the other of the two ballots that I think are vitally defective, the two ballots being designated as Exhibits 5 and 9. In Exhibit 5 it will be noted, as shown in the majority opinion, the cross was outside the square, while in No. 9 there was merely a check mark made within the square. The case of *Donlan* v. *Cooke*, supra, applies to the check mark voting as well as the cross. In regard to the check mark it was there said, ''three ballots were marked with a check mark instead of a cross. These ballots cannot be counted.''

The majority opinion instead of construing sections 696 and 777, Revised Codes as *in pari materia*, have given section 777, under which the majority assume to determine what the intention of the voter was, dominating control to the complete elimination of the provisions of section 696, while it appears clear that exactly the reverse should be the mode of construction; i. e.,

the intention of the voters must be determined by their compliance with the plain wording of the last named section.

In that connection, we think the reasoning in *Evans* v. *Reiser,* 78 Utah, 253, 2 Pac. (2d) 615, 624, is particularly pertinent. It is there said:

"It is inconceivable that the legislature would lay down rules to be followed in the counting of ballots which are merely directory as to what ballots shall be rejected and what ballots shall be counted. If such were the case, the result of an election might well depend upon the whim or caprice of those whose duty it is to count the ballots. The provisions of our statute which directs that 'any ballot marked by the voter in any other manner than as authorized in this chapter shall be rejected' is plain, certain, and definite. It is not in conflict with or modified by any other provisions of the election law, and it is mandatory. Under such circumstances there is no room for construction and it is our plain duty to give it effect. As illustrative of the duty of the courts under such circumstances, we quote the following language from Black on Interpretation of Laws, Hornbook Series (2d Ed.) pp. 51–53:

" ' Where the language of a statute is plain and unambiguous, and conveys a definite and sensible meaning, it is the duty of the court to enforce it according to the obvious meaning of the words employed, without attempting to change it by adopting a different construction, based upon some supposed policy of the legislature with reference to the subject matter, or upon considerations of injustice or inconvenience resulting from the literal interpretation of the statute, or even to give the law that efficiency and due effect which it will lack when taken literally as it stands.' "

The majority opinion also quotes at length from *Dickerman* v. *Gelsthorpe,* 19 Mont. 249, 47 Pac. 999, to sustain its contention that we must liberally construe our statutes. This is not only a rule of this court, but such rule is enjoined by statute —section 4, Revised Codes. But the case cited gives no support when read as a whole to the application made by the majority. At pages 255 and 256 of 19 Mont., 47 Pac. at page

1002 of that opinion, we read, "The distinctive feature of the Australian ballot system is the use of the mark in connection with the names of the candidates and questions to be voted on; and, *of course, unless the mark is employed to indicate the choice of the voter in his ballot, the ballot he casts is a nullity, however clearly that choice might otherwise be expressed.* (See *Martin* v. *Miles,* 46 Neb. 772, 65 N. W. 889)." Thus is the conclusion of the majority giving preference to assumed intention of the voter over the plain wording of the statute, repudiated by a former decision of this court that the majority has quoted to sustain its position as to use of the check mark instead of the cross.

Ballots designated Exhibits Nos. 5 and 9 are clearly illegal under a rational construction of our statutes, a former decision of this court, and by the majority rule in other jurisdictions, and should not be counted, and the judgment of the district court should be affirmed.

Rehearing denied December 19, 1939. MR. JUSTICE MORRIS dissenting.